DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Hocking County Common Pleas Court, Juvenile Division, judgment that awarded permanent custody of Robert Leitwein, born November 24, 1992, to Hocking County Children Services (HCCS).
 {¶ 2} Appellant, Kimberly Leitwein, the child's natural mother, assigns the following error for review:
"The trial court erred in ordering permanent custody of Robert Leitwein to the Hocking County Children's Services Board as such was against the manifest weight of evidence."
 {¶ 3} Appellant has four children: two are presently emancipated, one lives with an aunt and uncle, and the other is the subject of this appeal. Appellant has not played a significant maternal role in any of her children's lives.
 {¶ 4} Appellant has not had physical custody of Robert since 1994, when he was two years old. The record contains allegations that Franklin County Children Services removed Robert from appellant's home, but no documentary evidence exists to support these allegations. Nonetheless, no dispute exists that Robert stopped living with appellant in 1994 and has not lived with her since. Instead, Robert has lived with his grandmother and other relatives.
 {¶ 5} Beginning around the age of 5, Robert lived with his maternal aunt and uncle, Mike and Edith Meadows. In March of 2002, the Meadowses contacted HCCS and reported that they could no longer keep Robert in their home. On March 13, 2002, HCCS filed a complaint and alleged that Robert is a dependent child.
 {¶ 6} The complaint specifically alleged that on March 11, 2002, HCCS caseworkers Carol Powers and Katie Williams met with the then nine-year old child. HCCS had received a referral that Robert had acted out sexually on the school bus and at home. Robert's four-year old sister reported that he touched her "private," i.e., vaginal area, with his hand. The caseworkers met with the Meadowses, who reported that Robert "is very aggressive, and on two different occasions held [his sister] underneath the water while swimming." They also stated that Robert had put a rope around his sister's neck. The Meadowses stated that they are fearful that Robert will harm his sister and continue to perform sexual acts. They stated that they "can no longer deal with [the child's] behaviors and do not want him in their home." The Meadowses subsequently admitted the dependency allegation.
 {¶ 7} HCCS then attempted to implement a case plan for reunification. The Meadows stated that they would not accept Robert back into their home. No other suitable relatives existed and the whereabouts of the natural parents could not be determined. Thus, on March 28, 2003, HCCS filed a motion for permanent custody.
 {¶ 8} On June 16, 2003, appellant entered her appearance in the case. On July 2, 2003, the guardian ad litem filed her report and stated that in June of 2003, appellant stated that she was willing to enter into a case plan for reunification. The guardian ad litem nevertheless recommended permanent custody. She stated:
"[The child] has had at a minimum a traumatic childhood. More pointedly, [the child] has had a horrible childhood replete with instances of abuse, neglect, abandonment, and disappointment. He has not recovered from these events. However, he has made progress. It is that progress and the hope for continued progress that I think of when I make this recommendation."
She asserted that Robert's progress "will only be impeded by attempts at starting visits and reunification efforts especially if mother were to falter during the process. I think that while [the mother] has good intentions, there is no assurance that she will follow through with her plans." She also noted that the child's counselor's "strongly" recommended "against [the child] having any contact with his mother at this time." She believes that "[the mother's] reappearance into his life would be extremely traumatic to this child and would likely cause significant psychological harm." The guardian ad litem further noted that she has not witnessed any evidence of bonding between Robert and appellant and that Robert does not relate "any happy memories of his mother." The guardian ad litem noted that Robert does, however, remember his mother's abuse and abandonment. The guardian further opined that only minimal evidence exists to suggest that appellant's lifestyle would be other than the instability she has displayed in the past.
 {¶ 9} On September 18, 2003, the trial court held a hearing to consider HCCS's permanent custody request. Tri-County Mental Health social worker Sharon Kuss testified that on March 12, 2002 she first met Robert for a crisis intervention. She also saw Robert the next day for an intake after HCCS had received temporary custody. She also spoke with Robert's aunt and the appellant. She advised the court that she "cannot in good conscience recommend that [the child] either return to mom's care, or to be honest, at this point in time, even have visitation with mom. I think it could psychologically traumatize this child in the extreme."
 {¶ 10} When asked whether the appellant should be allowed to re-enter the child's life, Kuss stated:
"At this point in time, understand that [the child] is really fragile. The only way he would be able to deal with mom re-entering his life is if he is in — if he has the security to be able to handle that and cope with it without it basically destroying his sense of self again. And that can't happen — it's kind of a catch-22 — until he is in an adoptive placement, been there, feeling secure, been there for quite some time because we are taking a pretty tremendous trauma to have mom re-enter his life. You know, [the child] has come to a very fragile adjustment to his parents not being a part of his life. And he's okay with that right now. But if we push on that at the moment, because he can't have a solid sense of security at this time because he knows he's not where he's going to be and we can't give him that until he's in a permanent place. And that's the only kind of safeguard that we could have to cushion the trauma the re-introduction of either mom or dad in his life."
Kuss does not believe that it would help Robert to currently enter counseling sessions with the appellant to ease into the relationship. Kuss also stated that she had asked Robert about his mother and while he stated that he might want to see her again, he did not state that he would like to live with her.
 {¶ 11} HCCS social worker Ann Gadrim also testified that any reunification attempt with the appellant would be detrimental to the child.
 {¶ 12} On September 26, 2003, the trial court awarded HCCS permanent custody. Appellant filed a timely notice of appeal.
 {¶ 13} In her sole assignment of error, appellant argues that the trial court erred by awarding HCCS permanent custody. In particular, appellant asserts that (1) the record does not contain clear and convincing evidence to support the trial court's decision that awarding HCCS would serve Robert's best interests; and (2) before awarding HCCS permanent custody, HCCS should have attempted to reunify her with Robert. We disagree with appellant.
 {¶ 14} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156,556 N.E.2d 1169, 1171. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106,391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App. 1974),300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 15} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414.
 {¶ 16} R.C. 2151.414(A)(1) requires a trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 17} When considering a motion for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
(A) To provide for the care, protection, and mental and physical development of children * * *;
* * * *
(C) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
 {¶ 18} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04,495 N.E.2d 23, 26; see, also, State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74,564 N.E.2d at 60. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment.Id.
 {¶ 19} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained inSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273:
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 20} R.C. 2151.414(B) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 21} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. See R.C.2151.414(B)(1)(a). If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
* * * *
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * * *
(10) The parent has abandoned the child.
* * * *
(16) Any other factor the court considers relevant.
 {¶ 22} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See In re William S. (1996), 75 Ohio St.3d 95,661 N.E.2d 738; In re Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 23} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[1]
 {¶ 24} In the case at bar, we find ample competent and credible evidence to support the trial court's decision to award WCCS permanent custody of Robert. We first note that the trial court found that appellant demonstrated a lack of commitment by failing to regularly support, visit, or communicate with Robert. Appellant has not challenged the court's finding and evidence in the record clearly supports the finding. Appellant's relatives have cared for Robert since he was two years old. Since that time, appellant has not provided day-to-day care for Robert. For one year, she lived in Kentucky and had absolutely no contact with Robert. Again, the record amply demonstrates that Robert cannot or should not be placed with appellant within a reasonable time. See R.C. 2151.414(B)(1)(a) and (E)(4).
 {¶ 25} Next, the record contains competent and credible evidence to support a finding that granting HCCS would serve Robert's best interests. With respect to the first best interest factor, the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child, the evidence shows that no maternal bond exists between Robert and his mother. The evidence further shows that Robert has adjusted well to his foster home.
 {¶ 26} Regarding the second factor, the child's wishes, as expressed directly by the child or through the child's guardian ad litem, we note that the guardian ad litem recommended that the trial court award HCCS permanent custody. Additionally, as related by Kuss, Robert did not request that he be allowed to live with appellant.
 {¶ 27} With respect to the third factor, the child's custodial history, Robert has not been in appellant's physical custody since he was two years old. Since that time, he has lived with his grandmother (until he was age 5) another relative for a short time, and then the Meadowses until March of 2002.
 {¶ 28} The fourth factor, the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, further supports the trial court's decision to award WCCS permanent custody. The evidence reveals that Robert has abandonment issues and fears being abandoned yet again. To ease his abandonment fears, Robert needs a legally secure permanent placement where he feels safe and loved. Appellant's lengthy history of her inability or unwillingness to care for her children indicates that she will unlikely be able to care for Robert. Appellant has not shown a significant commitment to Robert and she has not fulfilled his emotional needs. For Robert to have a chance in life, he must be afforded an opportunity to develop in a stable and nurturing home. Appellant's past history establishes that she cannot provide Robert with an opportunity to successfully develop into a productive member of society. In fact, Robert's therapist stated that reuniting him with appellant would be detrimental to Robert's well-being. Additionally, no other suitable relative placements exist. Thus, the evidence supports the trial court's finding that a legally secure permanent placement cannot be achieved without a grant of permanent custody to HCCS.
 {¶ 29} Appellant further argues that the trial court erred by concluding that HCCS used reasonable efforts. She asserts that HCCS did not use reasonable efforts because it did not implement a case plan to reunify Robert with her, but instead sought permanent custody of the child.
Children services agencies are statutorily required to develop case plans for children in their custody and the case plans should include objectives for each of the child's parents. See R.C. 2151.412. The trial court is required to determine whether the agency made reasonable efforts to return the child to the parents before it authorizes the removal of the child.[2]
See R.C. 2151.419; In re Wright, Ross App. No. 01CA2627, 2002-Ohio-410.
 {¶ 30} In the case at bar, HCCS did not develop a case plan to include appellant, Robert's natural mother. We note, however, that HCCS could not locate appellant until after it had filed the permanent custody motion. Furthermore, even when the agency possesses a duty to use reasonable efforts, courts have found an implied exception to mandatory case planning efforts when those efforts would be futile. "[T]here is no need to implement a reunification plan when it would be futile." Elmer v. LucasCounty Children's Services Board (1987), 36 Ohio App.3d 241,244, 523 N.E.2d 540; see, also, In re Kramer, Franklin App. Nos. 02AP-1038 and 02AP-1039, 2003-Ohio-2277; In re Secrest, Montgomery App. No. 19378, 2002-Ohio-7094; In re Norris (Dec. 12, 2000), Athens App. Nos. 00CA38 and 00CA41. However, "[t]rial courts should be cautious in finding that reasonable efforts would have been futile where an agency has chosen to ignore the natural parent." In re Efaw (Apr. 21, 1998), Athens App. No. 97CA49.
 {¶ 31} In the case at bar, we agree with the trial court's conclusion that any attempt at reunification would have been futile. Appellant has had little to no contact with Robert for approximately eight years. She has relinquished the right to care for the child to other relatives. She has simply sat on her parental rights for eight years and now wishes to enter her biological child's life. All HCCS affiliated workers stated that appellant's return to Robert's life would further traumatize the child, at a time when he is beginning to cope with his feelings of abandonment. Robert has not expressed any strong feelings for appellant and does not recall many positive memories. For HCCS to attempt to reunify Robert with his biological mother would simply frustrate the child's progress. As Kuss stated, Robert first needs a stable and nurturing home before he can even begin to think about establishing any type of relationship with his biological mother.
 {¶ 32} Under the circumstances present in the case sub judice, we readily agree with HCCS and the trial court that any attempt at reunification would be futile. See, generally,Norris, supra.
 {¶ 33} Furthermore, courts have recognized that: "`* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"
In re Bishop (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838
(quoting In re East (1972), 32 Ohio Misc. 65, 69,288 N.E.2d 343, 346).
 {¶ 34} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Harsha, J. Evans, J.: Concur in Judgment Opinion.
[1] R.C. 2151.414(E)(7) to (11) provide as follows:
(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353
[2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
[2] The courts of appeal disagree whether a trial court must enter a reasonable efforts finding when the permanent custody motion is filed pursuant to R.C. 2151.413, as it was in this case. Some courts hold that when the permanent custody motion is brought pursuant to R.C. 2151.413, then the trial court is not required to enter an R.C. 2151.419 reasonable efforts finding. See, e.g., In re La.B., Cuyahoga App. No. 81981, 2003-Ohio-6852; In re Llewellyn, Fairfield App. Nos. 02CA10, 02CA11, and 02CA12, 2003-Ohio-1102; In re Moore (Dec. 15, 1999), Summit App. No. 19217. In Moore (Dec. 15, 1999), Summit App. No. 19217, the court explained its rationale for not requiring an R.C. 2151.419 reasonable efforts finding for an R.C.2151.413 permanent custody motion as follows:
"Under certain circumstances, R.C. 2151.419 requires the trial court to determine whether the public service agency has made reasonable efforts to keep the family together. By its plain language, the statute requires that the determination be made at any hearing held `pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314 [2151.31.4], 2151.33, or2151.353 [2151.35.3] of the Revised Code at which the court removes a child from his home or continues the removal of a child from his home [.]' R.C. 2151.419(A). The motion for permanent custody was made pursuant to R.C. 2151.413. When a motion for permanent custody is made pursuant to R.C. 2151.413, the hearing is conducted `in accordance with section 2151.35[.]' R.C.2151.414(A)(1). Although R.C. 2151.35 does refer to the `proper disposition to be made under section 2151.353[,]' it also directs that the `court shall proceed [with the dispositional hearing] in accordance with division (B) of' R.C. 2151.35. R.C. 2151.35(A). R.C. 2151.35 is not one of the hearing proceedings governed by R.C. 2151.419. Because of this, R.C. 2151.419 does not directly apply to motions for permanent custody made pursuant to R.C.2151.413. See In re Andrew Guisinger (May 31, 1994), Stark App. No. CA-9478, unreported.
The distinction between a complaint requesting permanent custody pursuant to R.C. 2151.28, which explicitly requires an R.C. 2151.419 determination, and a motion requesting permanent custody pursuant to R.C. 2151.413, which does not, is that R.C.2151.413 governs a second custody disposition for the same children. By the time an R.C. 2151.413 motion is made, the court has already made an initial disposition. R.C. 2151.413. It was required at the time of the initial adjudication and disposition to determine whether reasonable efforts were made to prevent the removal, or continued removal, of the child from the home. R.C.2151.353(H); R.C. 2151.419."
This court, however, has previously held that a trial court must enter an R.C. 2151.419 reasonable efforts finding for R.C.2151.413 permanent custody motions. See In re Wright, Ross App. No. 01CA2627, 2002-Ohio-410. In Wright, we stated:
"While we have previously ruled that a reasonable efforts determination was not required under a motion for permanent custody, see In re Rowe (Jan. 30, 1998), Scioto App. No. 97CA2592, unreported, the current version of R.C.2151.413(D)(3)(b) mandates otherwise. See Gianelli, Ohio Juvenile Law (2001 Ed.), Section 22.14.
Under R.C. 2151.419(B)(1) a court that makes a reasonable efforts determination must include a brief description of the relevant services provided by the agency and a statement concerning why those services were unsuccessful."