DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Julie G. ("Appellant"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two minor children and placed the children in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} CSB first became involved with this family during November 2002, when Appellant and her husband had only one child in the home, J.G., born August 30, 2000. CSB's complaint alleged abuse, neglect, and dependency, due to domestic violence by the child's father, lack of housing, and drug abuse and mental health issues of Appellant.[1] CSB also alleged that Appellant's parental rights to two older siblings had been involuntarily terminated and, consequently, the trial court later granted its request for a reasonable efforts bypass. See R.C.2151.419(A)(2)(e).
 {¶ 3} After J.G. was removed from her custody, Appellant became pregnant with D.G. During her pregnancy, Appellant repeatedly tested positive for crack cocaine. Appellant's drug use caused her to develop abruptio placentae, a life-threatening condition in which the placenta disengages from the uterine wall. Due to concerns that Appellant was not competent to make her own medical decisions, the probate court appointed a guardian to make medical decisions for her. D.G. was born on October 10, 2003. There is no evidence in the record that there were any medical complications during delivery or after birth. Shortly after her birth, D.G. was placed in CSB custody and was placed in the same foster home as her brother.
 {¶ 4} CSB moved for permanent custody of both children. Following a hearing on the motion, the trial court terminated Appellant's parental rights and placed both children in the permanent custody of CSB. Appellant appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR
"The trial court failed to find that there was clear and convincing evidence presented in its findings terminating mother's parental rights and that it was in the children's best interests to do so."
 {¶ 5} Appellant contends that the trial court's findings on the permanent custody test were not supported by clear and convincing evidence. Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619,624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned or orphaned, it must find by clear and convincing evidence that (1) either (a) the child has been in the temporary custody of the agency for at least twelve months of the prior twenty-two-month period, or (b) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2).
 {¶ 6} The trial court found that the first prong of the test was satisfied because "[t]he children should not be placed with their Mother nor can they be within a reasonable period of time." Appellant does not dispute that this finding was supported by evidence that her parental rights to two siblings of J.G. and D.G. had been involuntarily terminated at two separate points in time. See R.C. 2151.414(E)(11).
 {¶ 7} To satisfy the best interest prong of the permanent custody test, CSB was required to establish, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2). When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
 {¶ 8} "[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 9} The factor set forth in R.C. 2151.414(E)(11) is relevant here. R.C. 2151.414(E)(11) is relevant when the parent has had parental rights involuntarily terminated pursuant to R.C.2151.353, R.C. 2151.414, or R.C. 2151.415 "with respect to a sibling of the child."
 {¶ 10} We will address each best interest factor in turn, bearing in mind that "[a]lthough the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors."In re Smith, 9th Dist. No. 20711, 2002-Ohio-34; see, also, Inre Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 11} Appellant's interaction and interrelationship with the children did not demonstrate that there was a strong family bond or that Appellant was willing to place her children's needs ahead of her own. Appellant refused to address her crack cocaine problem and, in fact, admitted to CSB that she continued to use crack cocaine and that she had used it as recently as three days before the permanent custody hearing. Consequently, coupled with CSB's concerns about Appellant's unresolved mental health issues, Appellant's visitation with the children had never progressed beyond supervised visits for one hour each week. The CSB caseworker testified that, during Appellant's visits, there was little interaction between Appellant and the children. The CSB caseworker further testified that Appellant had been a "no-show" at many of the visits, meaning that she had failed to attend the visits but did not notify the agency or attempt to reschedule the visits. The guardian ad litem testified that he had planned to observe Appellant with both children at three separate weekly visits but Appellant was not attending visits at that time.
 {¶ 12} In addition to her problem with drug abuse, Appellant has mental health issues that impede her ability to parent her children. A mental health professional testified that Appellant had been uncooperative and resistant to treatment for her borderline personality disorder. The witness further explained that Appellant did need treatment and gave numerous examples of situations in which Appellant had been violent or volatile with the people around her, including her husband, her guardian, and others.
 {¶ 13} The guardian ad litem testified on behalf of the two young children and indicated that permanent custody was in the best interests of these children. He explained that Appellant's mental health and drug issues are overwhelming, that she has a lengthy history of problems, and that there does not appear to be an end in sight. He further testified that he had observed Appellant visit with J.G. before D.G. was born and that their interaction was not close and he did not observe normal parent-child bonding. On the other hand, the guardian ad litem also observed J.G. in the foster home and did observe him interacting and bonding with that family. He also noted that both children were thriving in their current environment with the foster family.
 {¶ 14} J.G. had been in the temporary custody of CSB for twelve months by the time of the hearing. That time period represented nearly one third of his short life. D.G. had been in CSB's temporary custody since her birth and, during that time, Appellant had missed several of her weekly visits with the children. During her entire case planning period, Appellant continued to use crack cocaine and refused to begin to address this problem. Appellant also resisted treatment for her mental health issues. Appellant blamed her husband for many of her own failures, including her drug problem and her failure to attend many appointments. She testified that she was going to leave her husband, suggesting that her problems then would be solved. Appellant had not even begun to address the most serious problems that threatened her family, despite having twelve months to do so.
 {¶ 15} The evidence demonstrated that both children need a legally secure placement and that there are no suitable relatives or friends who are willing to care for them. Because neither parent could care for them in the foreseeable future, permanent custody to CSB was the only way to achieve that stability.
 {¶ 16} When determining the best interests of the children, the trial court was also required to consider the prior involuntary termination of Appellant's parental rights to two older siblings of J.G. and D.G. The two older children were removed, at two separate points in time, due to Appellant's irrational and unstable behavior. Despite years of counseling and medication, Appellant was unable to resolve those problems and her parental rights to those two children were terminated in the mid-1990s. Several years later, this case arose and Appellant was faced with losing two more children due to her mental health issues, compounded by her also using crack cocaine. During this case planning period, Appellant has been uncooperative and resistant to treatment for her mental health issues and she has not even begun to address her drug problem.
 {¶ 17} The trial court had ample evidence before it to support its conclusion that permanent custody to CSB was in the best interests of J.G. and D.G. The assignment of error is overruled.
 {¶ 18} The assignment of error is overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Carr, P.J. Baird, J. Concur.
[1] Appellant's husband, the father of both children, voluntarily surrendered his parental rights and is not a party to this appeal.