OPINION
{¶ 1} This appeal is taken from a final judgment of the Geauga County Court of Common Pleas, Juvenile Division. Appellant, Amy Schaefer, appeals from the juvenile court's judgment terminating her parental rights and granting permanent custody of her minor son, Damian Xavier Schaefer ("Damian"), to appellee, Geauga County Job and Family Services ("GCJFS"). For the reasons that follow, we reverse the juvenile court's judgment and remand this matter for further proceedings.
 {¶ 2} By way of background, Damian was born prematurely on July 5, 2003. Doug Morris ("Doug") is Damian's biological father and appellant's boyfriend. At the time of Damian's birth, appellant and Doug resided in Geauga County, Ohio; however, they eventually moved to Cuyahoga County, Ohio.
 {¶ 3} On July 15, 2003, GCJFS filed a complaint with the Geauga County Court of Common Pleas, Juvenile Division, requesting protective supervision and/or temporary custody of Damian.[1] The complaint stated that on June 16, 2003, appellant was admitted to Lake West Hospital because she believed she was in labor. A toxicology report indicated that appellant had been using cocaine. Shortly after Damian's premature birth, a second toxicology of appellant report revealed her further cocaine use. Damian was also drug tested, and the test produced a positive toxicology screen for cocaine. Accordingly, the complaint designated Damian as an abused child, pursuant to R.C. 2151.031(D), and a dependent child, pursuant to R.C. 2151.04(B) and (C).
 {¶ 4} On August 1, 2003, the court issued a judgment entry which granted GCJFS temporary custody of Damian. The judgment entry determined that appellant and Doug had pleaded true to the complaint's allegations which named Damian an abused and dependent child.[2] Damian was then placed in the care of a foster family.
 {¶ 5} A case plan was filed with the juvenile court, and the parties agreed to its provisions and directives. The case plan required appellant and Doug to accomplish the following objectives: (1) obtain and maintain stable employment; (2) attend and participate in age appropriate parenting classes; (3) complete a mental health assessment and follow the recommendations resulting from such assessment; and (4) complete a drug and alcohol assessment and follow the recommendations resulting from such assessment.
 {¶ 6} The case plan also set forth a visitation schedule which allowed appellant and Doug one scheduled visit per week with Damian. Additional visitation time was available if appellant and Doug complied with the case plan objectives. Moreover, the case plan stated that appellant and Doug had failed to provide the names of any relatives available for the possible placement of Damian.
 {¶ 7} On July 2, 2004, GCJFS moved for permanent custody of Damian. In response, appellant and David Morris ("David"), Damian's paternal grandfather, timely filed individual motions for Damian's permanent custody. Ultimately, this matter proceeded to a two-day permanent custody hearing, commencing on September 15, 2004. David acted pro se at the hearing.
 {¶ 8} Michelle Warren ("Michelle"), a social worker for GCJFS, was assigned to assess Damian's temporary custody. Michelle testified that appellant had completed a parenting class. However, she further stated that appellant had failed to substantially comply with the remaining case plan objectives. Michelle noted that appellant and Doug had failed to provide requested pay stubs for verification of stable employment. More importantly, appellant and Doug failed to attend or complete the substance abuse programs that resulted from various drug and alcohol assessments. Michelle's testimony revealed that, in October 2003, appellant's random drug screen tested positive for cocaine use.
 {¶ 9} Michelle stated that GCJFS was diligent in its efforts to assist in appellant's substantial compliance with the case plan. Specifically, she testified that, throughout Damian's temporary custody, appellant was contacted and reminded of scheduled appointments and encouraged to comply with the case plan. Michelle stated that, because reliable transportation was a concern, she informed appellant that Geauga Transit passes were available through GCJFS and sent appellant transit passes via mail. She also notified appellant of various financial aid opportunities. Michelle testified that she had repeatedly instructed appellant to apply for Medicaid, but appellant failed to do so. Further complicating GCJFS's efforts were appellant's move to Cuyahoga County and Doug's unavailability.
 {¶ 10} Finally, Michelle testified that appellant's visitation with Damian was inconsistent. She stated that appellant missed at least one scheduled visit per month.
 {¶ 11} Janet Rice ("Janet"), Damian's guardian ad litem, filed her report with the juvenile court and testified during the hearing. Her report and testimony recommended that GCJFS be granted permanent custody of Damian.
 {¶ 12} Janet testified that Damian was a healthy baby with no physical or mental disabilities. She stated that appellant had exhibited positive parenting skills during supervised visits and Damian had demonstrated affection toward appellant. Likewise, Janet noted that Damian had bonded with his foster family and the foster family had provided him with a stable and loving family life.
 {¶ 13} Janet further testified that appellant's failure to substantially comply with the case plan prohibited appellant from addressing her substance abuse and mental health issues. Specifically, Janet recognized that while appellant had completed an assortment of substance abuse and mental health assessments, she failed to participate in the recommended counseling programs which resulted from these assessments.
 {¶ 14} Damian's paternal grandfather, David, also provided testimony at the hearing. David testified that Doug failed to inform him of Damian's birth and he was unaware of Damian's existence until February 2004. His testimony revealed that he requested visitation with Damian, however, GCJFS denied visitation until a home study was completed.
 {¶ 15} A home study report, dated May 18, 2004, was formally admitted as an exhibit. The report established that David and his wife Brenda Morris ("Brenda") were approved as a placement resource. Specifically, the report stated that David was formerly employed as a police deputy for twenty-six years and is currently honorably retired with pension benefits. Brenda is currently employed as an ambulance driver. The report also noted that David and Brenda have exceptional parenting skills.
 {¶ 16} David testified that following the home study, his visitation with Damian commenced. However, the case plan was not amended to institute a visitation schedule for David or address Damian's possible placement with David. Moreover, David stated that due to canceled visits by GCJFS, and the distance between his residence and the location of the visits, visitation was minimal. David also stated that he was currently operating a restaurant, but would reduce his work hours if granted custody of Damian.
 {¶ 17} On September 30, 2004, the juvenile court issued a judgment entry granting GCJFS permanent custody of Damian. The court determined, by clear and convincing evidence, that Damian was not abandoned or orphaned and cannot and should not be placed with either of his parents within a reasonable time. The court found that despite reasonable case planning and GCJFS's diligent efforts, "the parents have failed continuously and repeatedly to substantially remedy the conditions causing [Damian] to be placed outside [the parent's] home." The court stated that counseling services, psychiatric services, and drug and alcohol treatment services had been continuously made available to appellant and Doug, but they did not utilize these services. Thus, the court concluded that appellant and Doug had failed to successfully address the issues that caused Damian to be removed and, therefore, it was in Damian's best interest that GCJFS be granted permanent custody.
 {¶ 18} Next, the court acknowledged the possibility of Damian's legally secure placement with David. The court noted that the home study did not identify any concerns with placing Damian in David's custody and Damian's visits with David had gone well. Nevertheless, the court denied David's motion for custody, finding that "[Damian] has a limited relationship with his grandfather due to the delay in the grandfather becoming involved with the child and the infrequency of visits."
 {¶ 19} From this judgment, appellant filed a timely notice of appeal and now sets forth the following three assignments of error for our consideration:
 {¶ 20} "[1.] The trial court erred by granting the GCJFS' motion to terminate the parental rights because the parents had not failed to continuously and repeatedly to substantially remedy the conditions causing the child to be place [sic] outside the child's home and it was not in the best interests to terminate parental rights.
 {¶ 21} "[2.] The trial court erred by granting the GCJFS' motion to terminate the parental rights because the agency did not have reasonable case planning nor did it use diligent efforts to assist the parents in remedying the conditions that caused the child to be placed out of the home.
 {¶ 22} "[3.] The trial court erred by failing to grant the motion of the paternal grandfather for custody."
 {¶ 23} At the outset, we note it is well established that a parent's right to raise a child is an essential and basic civil right. In reHayes (1997), 79 Ohio St.3d 46, 48. The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14. See, also, In re Smith (1991), 77 Ohio App.3d 1, 16. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) Hayes at 49.
 {¶ 24} That being said, R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 25} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 26} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 27} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 28} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody
 {¶ 29} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances delineated in R.C.2151.414(B)(1)(a) through (d) is present. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb
(1985), 18 Ohio St.3d 361, 368.
 {¶ 30} In the context of terminating parental rights, our standard of review on appeal is whether the juvenile court abused its discretion. Inre Snow, 11th Dist. No. 2003-P-0080, 2004-Ohio-1519, at ¶ 28. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 31} We will address appellant's third assignment of error first as it is dispositive of this matter. Under her third assignment of error, appellant argues that the juvenile court abused its discretion by denying David's motion for permanent custody, thereby terminating her parental rights. Appellant contends that David, as Damian's grandfather, "was certainly willing and able to provide the care, and there was no testimony to suggest that this conclusion is inaccurate." Accordingly, appellant concludes that there was no evidence that placement of Damian with a foster family was a better alternative than placement with David.
 {¶ 32} We must first determine whether appellant has standing to challenge the court's denial of David's motion for permanent custody. "[A] parent has standing to challenge the juvenile court's failure to grant a motion for legal custody of a child to a relative, where the court's denial of that motion led to a grant of permanent custody to the children services agency and impacted the residual rights of the parent. * * * However, the parent is limited to challenging only how the court's decision impacted the parent's rights and not the rights of the relative. A parent has no standing to assert that the court abused its discretion by failing to give the [relative] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper." (Citations omitted.) In re Pittman, 9th Dist. No. 20894, 2002-Ohio-2208, at ¶ 70. See, also, In re Hiatt
(1993), 86 Ohio App.3d 716, 721.
 {¶ 33} Accordingly, appellant has standing to challenge the juvenile court's denial of David's motion for custody because this denial resulted in a grant of permanent custody to GCJFS. Also, appellant's argument directly challenges the court's decision to terminate her parental rights, rather than collaterally challenging the court's denial of David's motion for permanent custody.
 {¶ 34} After careful examination of the record before us, we have determined that the court's termination of appellant's parental rights was an abuse of discretion. However, we emphasize that our decision in this matter is limited to the instant facts.
 {¶ 35} First, we acknowledge the juvenile court properly found that appellant failed to substantially comply with the case plan and that appellant failed to remedy the conditions which caused Damian's temporary custody with GCJFS. However, in this case, GCJFS was also required to present clear and convincing evidence that no suitable relative was available for placement. It failed to do so.
 {¶ 36} As stated previously, the juvenile court was required to consider the factors under R.C. 2151.414(D) to determine the best interest of the child. The final factor that the court was required to consider was Damian's need for a legally secure permanent placement and whether such placement could be accomplished without a grant of permanent custody to GCJFS. In In re A.A., 9th Dist. No. 22196, 2004-Ohio-2513, at ¶ 17, the Ninth Appellate District concluded, "[t]his best interest factor is often established by the agency presenting evidence that the child needs a secure placement and that neither parent nor any suitable relative is available to care for the child on a permanent basis." See, also, In re J.G. and D.G., 9th Dist. No. 21994, 2004-Ohio-1296, at ¶ 15; In re Leitwein, 4th Dist. No. 03CA18, 2004-Ohio-1296, at ¶ 28.
 {¶ 37} We agree with the Ninth District's conclusion that, when necessary, the juvenile court is required to consider the possibility of placement with a suitable relative. This proposition of law is supported by the language of R.C. 2151.414(D). Specifically, R.C. 2151.414(D) states, "[i]n determining the best interest of a child * * * the courtshall consider all relevant factors, including, but not limited to, the following[.]" The language of R.C. 2151.414(D) clearly sets forth a non-exhaustive list of factors and requires the juvenile court to consider any factor relevant to the best interest of the child. In the case at bar, the possible placement of Damian with a suitable relative was a relevant factor.
 {¶ 38} Here, the juvenile court's judgment entry considered David as a possible suitable placement option. However, David was dismissed as a placement option due to the limited relationship he had with Damian. The court noted that this limited relationship was the result of David's delay in becoming involved with Damian's custody and David's infrequent visits with Damian.
 {¶ 39} Testimony at trial revealed that extenuating circumstances caused the limited relationship and infrequent visits. In particular, the evidence demonstrates that David was unaware of Damian's existence until February 2004. Despite his request to establish visitation, David's ability to visit and bond with Damian was further postponed by the necessity of completing a home study. The home study was completed in May 2004, and David began visitation with Damian. Nevertheless, GCJFS moved for permanent custody approximately two months later in July 2004. David's lack of knowledge with respect to Damian's existence and GCJFS's rapid filing for permanent custody establishes mitigating circumstances for David's delayed and infrequent visitation.
 {¶ 40} Moreover, David testified that GCJFS had cancelled visitations because of scheduling conflicts. David's visits were also hindered by GCJFS's failure to amend the case plan to include a predetermined visitation schedule for David and Damian. This evidence provides a justification for David's inability to visit Damian on a regular basis and form a bond with the child.
 {¶ 41} In the case at bar, the evidence established that GCJFS had a minimal amount of time to investigate whether David was a viable option for legally secure placement. The amount of time to investigate was further diminished by GCJFS's expedited filing of a motion for permanent custody and GCJFS's failure to provide a visitation schedule.
 {¶ 42} If a legally secure placement could have been accomplished without terminating parental rights, then GCJFS should have extended temporary custody to more thoroughly explore this less drastic alternative to permanently severing a family relationship. See, e.g., Inre A.A. at ¶ 18. Failure to do so resulted in the inability of GCJFS to supply the juvenile court with clear and convincing evidence that David was not a suitable placement option.
 {¶ 43} We stress that the termination of parental rights is an alternative of last resort, and the parent has no burden to prove that his or her parental rights should not be terminated. See, e.g., In reWise (1994), 96 Ohio App.3d 619, 624. It was GCJFS's burden to prove, by clear and convincing, that termination of appellant's parental rights was not only a necessary option, but also the only option. At this time, in the case sub judice, GCJFS has failed to meet this burden. Absent is any evidence that David could not provide legally secure permanent placement. Thus, we conclude that the court's termination of appellant's parental rights was an abuse of discretion, as GCJFS failed to present clear and convincing evidence that this termination was in Damian's best interest. Appellant's third assignment of error is with merit.
 {¶ 44} Based upon the foregoing analysis, appellant's third assignment of error is with merit. Accordingly, appellant's first and second assignments of error have been rendered moot. The judgment of the juvenile court is hereby reversed, and this matter is remanded. Upon remand, GCJFS is to amend the case plan to set forth a visitation schedule which will allow a proper evaluation of David as a possible permanent placement option. Temporary custody is to remain in effect pending further proceedings consistent with our opinion.
O'Neill, J., concurs, Rice, J., concurs in judgment only.
[1] When GCJFS filed the complaint, Damian was still recovering in the Neo-Natal Intensive Care Unit.
[2] Based upon paternity testing, the complaint established David as Damian's biological father.