DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Angelia Willochell, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, G.B., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Appellant is the mother of G.B., born September 27, 2004. At the time of the birth of the child, Appellant was married to Titus Makau, thereby creating a presumption that he is the father of the child. Another man, Gary B. was listed as G.B.'s father on her birth certificate, however. No genetic testing was done to verify actual paternity. Neither man participated in the permanent custody hearing below, and only Appellant has appealed. Where appropriate, Appellant, Titus Makau, and Gary B. will be collectively referred to as "the parents."
 {¶ 3} CSB initially became involved in this case based on a referral from the hospital shortly after G.B.'s birth. Appellant was said to have received little or no pre-natal care and had demonstrated an inability to care for the child. On October 4, 2004, CSB filed a complaint, alleging that the child was dependent. Emergency temporary custody was awarded to the agency. The matter proceeded to adjudication and disposition. At the conclusion of those hearings, neither of which was attended by the parents, G.B. was found to be a dependent child and was placed in the temporary custody of CSB.
 {¶ 4} Three months later, on January 4, 2005, CSB was relieved of its obligation to make reasonable efforts towards reunification with Appellant and Makau, based upon the fact that their parental rights had been involuntarily terminated with respect to siblings of G.B. See R.C.2151.419(A)(2)(e). CSB was also relieved of its obligation to make reasonable efforts as to Gary B., based upon a finding that he had abandoned the child. See R.C. 2151.419(A)(2)(d).
 {¶ 5} On January 24, 2005, CSB moved for permanent custody.[1]
Following a hearing on the motion, the trial court terminated the parental rights of Appellant, Titus Makau, and Gary B. as to the minor child G.B., and placed the child in the permanent custody of CSB.
 {¶ 6} Appellant timely appeals and assigns two errors for review. Because the assignments of error are related, they will be considered together.
 ASSIGNMENT OF ERROR I
"The trial court's decision granting the motion for permanent custody was against the manifest weight of the evidence and/or contrary to law."
 ASSIGNMENT OF ERROR II
"The trial court's decision granting the motion for permanent custody constituted an abuse of discretion."
 {¶ 7} In her supporting argument, Appellant asserts that the trial court's finding that Appellant failed to remedy the problems which necessitated removal of the child is not supported by the evidence. Appellant also argues that the finding that permanent custody was in the best interest of the child was not supported by the evidence and was an abuse of discretion. This is so, she reasons, because she was not afforded sufficient opportunity to complete her case plan or demonstrate that she was capable and willing to complete her case plan.
 {¶ 8} Although Appellant asserts that the trial court abused its discretion and entered an order that was against the manifest weight of the evidence, this Court does not review a best interest finding under an abuse of discretion standard of review, for a trial court has no discretion to make a finding that is not supported by the evidence. This Court reviews a trial court's factual findings to determine whether they were against the manifest weight of the evidence. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3.
 {¶ 9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B) (1) and 2151.414(B) (2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 10} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. Ozmun, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 11} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 12} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 13} The trial court found that the first prong of the permanent custody test was satisfied by a finding that the child could not be placed with either parent within a reasonable time or should not be placed with her parents. See R.C. 2151.414(E). This finding was supported, in turn, by determinations that Appellant: (1) failed to remedy any of the problems which necessitated the removal of the child, R.C. 2151.414(E)(1); (2) demonstrated a lack of commitment to the child in that she failed to visit with the child since October 13, 2004, failed to support the child, and failed to plan a permanent home for the child, R.C.2151.414(E)(4); (3) had her parental rights terminated as to all seven of the child's siblings, R.C. 2151.414(E)(11); and (4) has been convicted of child endangering as to a sibling of the child, R.C. 2151.414(E)(7). The trial court, therefore, found that the child should not be returned to Appellant's custody.
 {¶ 14} As to Makau, the trial court determined that he: (1) abandoned the child, R.C. 2151.414(E)(10); (2) had been convicted of gross sexual imposition as to a sibling of the child, R.C. 2151.414(E)(7); and (3) had his parental rights involuntarily terminated as to two siblings of the child, R.C. 2151.414(E)(11). The trial court, therefore, found that G.B. should not be placed in Makau's custody.
 {¶ 15} As to Gary B., the trial court determined that he: (1) failed to demonstrate a commitment to the child by failing to support the child, R.C. 2151.414(E)(7); and (2) failed to remedy the problems which required removal, R.C. 2151.414(E)(7). The trial court, therefore, found that the child should not be placed in the custody of Gary B.
 {¶ 16} As to the first prong of the permanent custody test, Appellant argues that the finding by the trial court that Appellant failed to remedy problems which necessitated removal of the child is not supported by the evidence. Even assuming Appellant's argument is correct, the trial court made several additional determinations pursuant to R.C. 2151.414(E) in support of its conclusion that the child could not or should not be placed with the parents. None of the other determinations are challenged. Any one of these determinations requires the trial court to enter a finding that the child cannot or should not be placed with Appellant. R.C. 2151.414(E). Consequently, Appellant's argument as to the first prong of the permanent custody test is without merit.
 {¶ 17} The second prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 18} When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 19} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith, 9th Dist. No. 20711, 2002-Ohio-34; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24
 {¶ 20} As to this portion of the permanent custody test, Appellant contends that the trial court erred in granting permanent custody because she was not afforded sufficient time to comply with the objectives of her case plan or to demonstrate that she was capable and willing to complete her case plan. CSB's motion for permanent custody was filed three and one-half months after the original complaint was filed.
 {¶ 21} Appellant has not referred to any statutes or case law that supports her argument. As to statutory requirements, we note that former R.C. 2151.413(A) required that a children services agency must have had temporary custody of a child for at least six months immediately preceding the filing of a motion for permanent custody pursuant to this statute. In re Hayes (1997), 79 Ohio St.3d 46, syllabus. However, the statute was amended, effective September 18, 1996, and the amendment eliminated the six months of continuous temporary custody as a prerequisite to the filing of a motion for permanent custody under R.C.2151.413(A). See In re Brenna E. (1997), 124 Ohio App.3d 143. Consequently, R.C. 2151.413(A) does not provide a time-bar to the filing of the motion for permanent custody in this case.
 {¶ 22} As to the facts of this case, we note that Appellant had three months to make progress on her case plan and demonstrate her willingness to complete the plan, before the trial court relieved CSB of its obligation to make reasonable efforts towards reunification. Appellant's case plan required her to (1) obtain a mental health assessment and follow any recommendations, including a recognition of the impact her relationship choices have had on her ability to parent; (2) provide for the basic needs of her children, including independent, stable housing; (3) complete a substance abuse assessment; (4) complete a parenting assessment and follow any recommendations; (5) participate in weekly visitations.
 {¶ 23} Appellant admitted that in October 2004, she was aware of the case plan and her need to comply with its requirements. Nevertheless, she has failed to comply with any aspect of her case plan. Indeed, Appellant has completely failed to demonstrate any responsibility for or commitment to G.B. The record demonstrates that Appellant failed to keep her appointment for her mental health assessment; failed to secure stable, independent housing; failed to complete a substance abuse assessment; failed to complete a parenting assessment; and failed to attend any visitations other than the family meeting on October 13, 2004.
 {¶ 24} As to the missed visits, Appellant asks this Court to accept her incarceration or fear of being arrested on an outstanding warrant as an excuse for not attending many of her scheduled visits. It should come as little surprise that this Court is unwilling to accept incarceration or fear of arrest as suitable reasons for a parent not to visit an infant child. As to housing, Appellant testified that she expects to live in a home that she claims Gary B. recently purchased. Appellant apparently does not view Gary B.'s criminal charge for receiving stolen property, his outstanding arrest warrant, his failure to visit the child, his failure to comply with any of his own case plan requirements, and his failure to attend the permanent custody hearing as being impediments to her plan. This Court, however, does. Clearly, Appellant gave CSB no reason to believe more time would be helpful to accomplishing the goals of her case plan or would be beneficial to the interests of G.B.
 {¶ 25} To the extent that case plan compliance is relevant to the trial court's best interest determination pursuant to R.C. 2151.414(D), the above facts are appropriately considered. See, e.g., In re A.A., 9th Dist. No. 22196, 2004-Ohio-5955, at ¶ 9; In re Atkins (Nov. 18, 1998), 9th Dist. No. 19037, at 12.
 {¶ 26} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the children. Here, the principal relevant relationships are with Appellant, Makau, and Gary B. There is no evidence that any of them maintained a bond with the child or even developed a relationship with her.
 {¶ 27} The record reveals that Appellant had a lengthy history with CSB, extending back to 1992. Appellant previously had her parental rights terminated as to seven other children. Her parental rights as to three children were terminated in Mississippi on June 10, 2003. Her parental rights as to the other four children were involuntarily terminated by the Summit County Court of Common Pleas, Juvenile Division, in In re: T.W.,D.O., J.M., T.M. (Apr. 13, 2004), Summit County Court of Common Pleas, Juvenile Division, Case Nos. DN 03-6-502, DN 03-5-503, DN 03-6-504, DN 03-6-505.
 {¶ 28} All three of the parents have criminal records. Makau had been convicted of gross sexual imposition on August 13, 2003, in regard to a sibling of G.B, and was labeled as a sexually oriented offender. Statev. Makau, Summit County Court of Common Pleas, Case No. CR 03 07 1884. He was sentenced to a year in prison. Appellant was convicted of child endangering for failing to protect her child from Makau. On July 8, 2004, Appellant was sentenced to 180 days in jail. She was released to house arrest on August 11, 2004, due to jail overcrowding. She went AWOL on October 21, 2004 and a warrant was issued for her arrest. She turned herself in on January 24, 2005, and was incarcerated at the time of the permanent custody hearing. Gary B. had been charged with receiving stolen property and was the subject of an outstanding arrest warrant on that charge at the time of the hearing in this matter.
 {¶ 29} Amanda Russell, the CSB caseworker assigned to the case in November 2004, testified that she was not aware of any bond between the parents and G.B., but that G.B. was attached to her foster parents. The caseworker indicated that the foster parents interacted in a positive, stimulating manner with the child and were interested in adopting her.
 {¶ 30} Kimberly Nelson, the guardian ad litem testified similarly that the foster parents were very attentive, loving, nurturing, and enthusiastic. She stated that G.B. was doing wonderfully and developing normally. Nelson was familiar with Appellant because she was the guardian ad litem in the previous case which resulted in termination of Appellant's parental rights as to four of her children. She testified that Appellant had a long history of non-compliance with CSB efforts. Nelson gave an example of an occasion where she went to the home of Appellant and Makau for an appointment and watched them drive off together. Nelson then called CSB and learned that Appellant cancelled her appointment just ten minutes earlier, saying she was in Canton. Nelson also expressed concern as to Appellant's emotional and mental health.
 {¶ 31} G.B. never knew her siblings, and since they have all been placed in permanent custody, there is no relationship to be developed with them.
 {¶ 32} As to the second best interest factor, Kimberly Nelson, the guardian ad litem, spoke on behalf of G.B. and recommended that it would be in the best interest of the child to be placed in the permanent custody of CSB. Nelson stated that G.B. deserves to be in a loving, nurturing, and stable home. She does not believe that Appellant can provide that home for her today or in the near future. Nelson stated that, in her opinion, the child should not be made to wait any longer for a permanent home.
 {¶ 33} The custodial history of the child reveals that G.B. has been in foster care virtually her entire life. Furthermore, except for a single family meeting, none of the parent figures in this case have attended any visits with the G.B. Nor have they otherwise communicated with the child.
 {¶ 34} As to the fourth best interest factor, there was testimony before the trial court that the child is in need of a loving, stable, permanent home where her needs would be met. The CSB caseworker testified that G.B.'s parents are not currently able to provide for her needs. Possible alternative placements were explored, but no suitable friend or family member was available to assume custody. The child needs a legally secure placement and permanent custody is the only way to achieve that permanency. The caseworker testified that she believed it was in the best interest of the child that she be placed in the permanent custody of CSB.
 {¶ 35} Finally, the trial court was entitled to consider, pursuant to R.C. 2151.414(D)(5) that Makau pled guilty to a violation of R.C. 2907.05
in which a sibling of G.B. was the victim, see R.C. 2151.414(E)(7)(d); that Makau and Gary B. have each abandoned the child, see R.C.2151.414(E)(10); and that Appellant and Makau have each lost parental rights as to siblings of the child, R.C. 2151.414(E)(11).
 {¶ 36} Upon review, the record demonstrates that there was ample evidence before the trial court from which it could conclude that G.B. cannot be placed in the custody of her parents within a reasonable time or should not be placed in the custody of her parents, and that permanent custody was in the child's best interests. The record does not support a conclusion that the trial court clearly lost its way and created a manifest miscarriage of justice. Consequently, the trial court did not err in terminating Appellant's parental rights, and placing G.B. in the permanent custody of CSB. Appellant's two assignments of error are overruled.
 {¶ 37} Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, J. Moore, J. concur.
[1] The initial motion for permanent custody sought termination of the parental rights of Appellant and Gary B. The motion was amended on February 1, 2005 to also include Titus Makau, Appellant's husband at the time of the birth of the child.