DECISION AND JOURNAL ENTRY
{¶ 1} Edward S., ("Father") appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor children, A.S. and D.S., and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.
 I. {¶ 2} Edward S. and Heather R. ("Mother") are the parents of A.S., born May 26, 2005, and D.S., born March 21, 2006. LCCS initially became involved with this family in June 2006, upon concerns of domestic violence and the inability of the parents to provide for the basic needs of the children. The agency investigated and found that the home had been without electric power for a month, the parents had no income, and the family faced eviction. They also had concerns with the condition of the children. For example, one-year-old A.S. had communication difficulties, often screamed, and banged his head. On September 6, 2006, LCCS filed a *Page 2 
complaint in juvenile court, alleging dependency and neglect of the children. In due course, the trial court adjudicated the children to be dependent, but permitted the children to remain in the family home under the protective supervision of the agency.
 {¶ 3} The case plan required the parents to obtain domestic violence assessments and counseling. The parents were also required to maintain housing for six consecutive months, keeping their home safe and sanitary while maintaining working utilities and a three-day supply of food. They were required to show a stable source of income and utilize community resources for assistance. The parents were asked to have a child-care plan in place, take the children for regular medical care, cooperate with Help Me Grow services, and ensure that the children were properly diapered, clothed and supervised.
 {¶ 4} Because the parents were not involved in any of the indicated case planning requirements, on March 27, 2007, LCCS moved for a change of disposition to temporary custody. Father had attended only one session of domestic violence counseling and was subsequently discharged from the program for failing to participate any further. Mother made an appointment for counseling, but failed to keep it. Mother continued to complain to the agency of domestic violence. She repeatedly left the home to stay with relatives, but returned again and again. The parents provided no proof of employment and failed to maintain housing. Importantly, they failed to keep appointments with service agencies for financial assistance or work programs with the result that the family was not receiving any financial assistance or resources. The parents failed to participate in the Help Me Grow program for A.S., although he appeared to be greatly delayed. The children were often confined to playpens or walkers and left unsupervised. Accordingly, on April 23, 2007, the court awarded temporary custody to LCCS. *Page 3 
 {¶ 5} At the same time, mental health evaluations and parenting classes were added to the requirements of the parents' case plans. Because of the previous non-responsiveness of the parents, no visitation was initially granted by the trial court. By May 2007, twice weekly visitation was offered. The parents attended for a few weeks, but after July 2007, neither parent came to visit with their children again.
 {¶ 6} LCCS moved for permanent custody in October 2007. Following a hearing the trial court terminated the parental rights of Mother and Father and granted the agency's motion for permanent custody. Father timely appeals and assigns one error for review.
 II. ASSIGNMENT OF ERROR "THE JUDGMENT ENTRY FILED IN THIS MATTER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO AWARD PERMANENT CUSTODY OF THE CHILD TO THE STATE OF OHIO."
 {¶ 7} Father contends that the evidence did not support the award of permanent custody of the child to LCCS.
 {¶ 8} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99. *Page 4 
 {¶ 9} The trial court found that the first prong of the permanent custody test was satisfied because the children could not be returned to their parents within a reasonable period of time and should not be returned to their care. In support of that finding, the trial court found that the parents had failed continuously and repeatedly to substantially remedy the conditions that led to the placement of the children outside of the home, R.C. 2151.414(E)(1); the parents demonstrated a lack of commitment toward the children, R.C. 2151.414(E)(4); the parents have abandoned the children, R.C. 2151.414(E)(10); and the parents are unwilling to provide food, clothing, shelter, and other basic necessities for the children, R.C. 2151.414(E)(14).
 {¶ 10} Father makes two arguments in claiming that LCCS failed to meet its statutory burden in regard to the first prong of the permanent custody test. First, Father asserts that LCCS failed to establish that the children were in temporary custody for 12 of the prior 22 months. Indeed, the record reveals that the children were not in temporary custody for 12 of the prior 22 months. However, the agency did not make such a claim, the trial court did not make such a finding, and there was no error in the trial court's failure to make such a finding. Upon the facts of this case and in light of other findings made by the court, the trial court was not required to make such a finding in order to sustain its award of permanent custody to LCCS. Father's argument on this point is overruled.
 {¶ 11} Second, Father asserts that the agency failed to produce any evidence indicating that the children could not be placed with him within a reasonable time. Father claims that his ability to work on the case plan was hindered, and apparently somehow excused, by the existence of an outstanding warrant for his arrest on charges of domestic violence. According to Christine Turcola, LCCS Supervisor, the warrant was issued in late August 2007. Father has not *Page 5 
disputed this date. The warrant would not, therefore, have had any effect on Father's lack of compliance with his case plan for the nine months prior to that time.
 {¶ 12} In addition, Father was represented by legal counsel during these proceedings and Father's concern with an outstanding arrest warrant was never brought to the attention of the trial court. Moreover, there is nothing in the record to suggest that Father had a valid defense to the charges being brought against him. Not only did Father seek to avoid the execution of an arrest warrant, but, in the process, he also failed to comply with the orders of the juvenile court in the form of the court-adopted case plan. Consequently, Father's alleged fear of arrest is not a valid reason to excuse compliance with his case plan and is not a legitimate ground upon which to dispute a finding that the children could not be placed with him within a reasonable time. SeeIn re G.B., 9th Dist. No. 22628, 2005-Ohio-4540, ¶ 24.
 {¶ 13} Father also contends that there was no testimony regarding the interaction between him and his children during visitation. The record reveals that Father attended only a few visits between May 11, 2007 and July 17, 2007. Ms. Turcola testified that Father often arrived late to visitation and then demonstrated more concern with Mother than with his children. The record also indicates that neither parent attended any visits with the children during the last eight months of this case. While LCCS did not present an abundance of evidence on this point, there was competent and credible evidence before the trial court to support its findings. The paucity of evidence regarding parental interaction with children might well be significant in another case, but the evidence that this Father attended only a few visitations, chose to focus more on Mother than the children when he did attend, and then failed to visit his young children for eight months is compelling in terms of their relationship. *Page 6 
 {¶ 14} In addition, Ms. Turcola testified that neither parent had made progress on any aspect of the case plan during the last year and one-half Father attended only one session of domestic violence counseling and was discharged from the program for lack of participation. The parents failed to cooperate with the Help Me Grow program, as asked. They made little to no progress towards the goals of maintaining a stable home and being able to support their children. The parents had been evicted from at least two residences and were homeless at the time of the permanent custody hearing.
 {¶ 15} The record indicates that the parents failed to attend most of the court proceedings and the four review hearings in this case. They also failed to attend the permanent custody hearing. Their attorneys were present at the permanent custody hearing, but offered no valid explanation for their clients' absence. Father's attorney stated that he did not even know how to contact Father. LCCS supervisor Turcola testified similarly that Father refused to give her his address and phone number, apparently in an effort to avoid arrest. Ms. Turcola stated that Mother called the agency on the Friday preceding the hearing, saying she had the flu and would probably not attend the Monday hearing three days later. The record before the trial court supports the finding that the children could not be placed with a parent within a reasonable time or should not be placed with a parent. Father has not demonstrated any error in the trial court's finding.
 {¶ 16} The trial court also found that it was in the best interests of the children to be placed in the permanent custody of the agency. Father argues that LCCS failed to present sufficient evidence to establish that permanent custody is in the best interest of the children. When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors: *Page 7 
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 17} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24. The agency must prove by clear and convincing evidence that permanent custody is in the best interest of the child. In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, at ¶ 12. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 18} The evidence indicates that the parents were often late to visits and did not focus on the children when they were at the visitation center. There was no evidence of a positive relationship between the children and other relatives. The children were reportedly doing very well in foster care. They both had ear tubes inserted in order to address their chronic ear *Page 8 
infections and that has resulted in some progress in their ability to communicate. They were working with Help Me Grow and making progress developmentally.
 {¶ 19} The wishes of these young children were expressed by Paul Fortner, the guardian ad litem. Mr. Fortner reported that the parents had failed to comply with the case plan requirements for counseling, employment, and stable housing. Mr. Fortner had submitted several reports to the juvenile court through the course of this case. He initially took the position that it was beneficial for the children to remain in the family home, but that position changed as the parents were repeatedly forced to relocate their family and the parents failed to obtain employment or any other means of support. Eventually, Mr. Fortner came to the conclusion that the children were much better off in their foster placement. He indicated that the children had been placed with an extremely caring foster family. The children had become bonded with the foster family. Mr. Fortner concluded that it would be in the best interests of the children to be placed in the permanent custody of LCCS.
 {¶ 20} At the time of the permanent custody hearing, A.S. was nearly three years old and D.S. was nearly two years old. The children had been in foster care for ten months and under the protective supervision of the agency for six months before that. The parents visited with their children for only two months and had had no contact with them for the last eight months.
 {¶ 21} There was evidence before the trial court that the children were in need of a legally secure placement and that there were no suitable friends or relatives willing to provide for their care. The foster parents were very interested in adopting the children. The LCCS supervisor testified that permanent custody was in the best interests of the children. The evidence supports the conclusion of the trial court that permanent custody was in the best interests of the children. Father's sole assignment of error is overruled. *Page 9 
 III. {¶ 22} Father's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 CARR, P. J., WHITMORE, J. CONCUR. *Page 1