DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, David A. ("David"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child, A.A., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). We reverse and remand.
 {¶ 2} David is the natural father of A.A., born December 16, 1998. The child's mother, Kim, voluntarily relinquished her parental rights and is not a party to this appeal. CSB first became involved in this case in October 2002 after being contacted by A.A.'s grandmother, who had been caring for A.A., but needed to leave town. Kim had left A.A. in the grandmother's custody while she allegedly received drug treatment for 30 days. Because Kim did not return at the end of that period, it was suspected that she was on a drug binge. CSB took custody of A.A. because it was not able to locate Kim and David was incarcerated for violating probation on a nonpayment of child support charge.
 {¶ 3} CSB later moved for permanent custody of A.A. Following an evidentiary hearing, the trial court terminated parental rights and placed A.A. in the permanent custody of CSB. David appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR
"The trial court's award of permanent custody is not supported by sufficient evidence meeting the burden of clear and convincing evidence that permanent custody was in the best interest of [A.A.]."
 {¶ 4} David contends that CSB did not establish that permanent custody was in the best interest of A.A. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2). See, also, In re William S. (1996), 75 Ohio St.3d 95, 99. The trial court found that the first prong of the test was satisfied because A.A. had been in the temporary custody of CSB for at least 12 of the prior 22 months and David does not contest that finding. David challenges only the best interest prong of the permanent custody test.
 {¶ 5} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[1]
 {¶ 6} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711. See, also,In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 7} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 8} A review of the permanent custody hearing reveals that CSB focused much of its case on A.A.'s mother and presented very little evidence to establish that each of the above factors weighed against David and in favor of permanent custody of A.A. to CSB. As explained below, we conclude that CSB failed to establish that permanent custody was in the best interest of A.A. by even a preponderance of evidence, much less by the heightened standard of clear and convincing evidence.
 {¶ 9} Most of CSB's evidence pertained to the mother of A.A., who is not involved in this appeal. The testimony that CSB did present pertaining to David focused on whether he had complied with the requirements of his case plan, and those details were rather vague. Moreover, as this Court has stressed in the past, although case plan compliance may be relevant to the trial court's best interest determination, it certainly is not dispositive. See, e.g., In re C.M., 9th Dist. No. 21372, 2003-Ohio-5040, at ¶ 10. The agency was required to establish that permanent custody was in the best interest of A.A. based on the specific best interest factors listed above.
 {¶ 10} The evidence regarding the interaction and interrelationship of A.A. and David is sketchy at best. As we have stressed, the first best interest factor is "highly significant" and "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved." In re Smith, 9th Dist. No. 20711;In re C.M., at ¶ 11.
 {¶ 11} Most of the evidence about A.A.'s interaction with his father came through the testimony of David's sister, who A.A. was residing with at the time of the hearing. She indicated that David attended visits with A.A. regularly, that A.A. is bonded to David to a certain degree, and that she had never observed any inappropriate behavior. She noted that A.A. does not have consistency with his parents but she did not explain that statement. She also testified that David and Kim had a "terrible" relationship, that she did not believe that David would give up the relationship, and that she did not believe that the relationship was good for A.A. David's sister did not explain what she meant by a "terrible" relationship, however. She did testify that she had never observed any violence between the two and that she was not concerned that David would ever be violent with A.A. She also indicated that David was a good father when Kim was not around.
 {¶ 12} The trial court's conclusion about the family relationship here focused on the relationship between David and Kim. The trial court concluded that there was a violent relationship between David and Kim and that A.A. had witnessed that violence, despite the fact that Kim did not testify and David did not substantiate those facts. In fact, there was no clear evidence that there had been more than two instances of violence over a period of three years, it was unclear who had initiated the violence, and the only evidence that A.A. had witnessed any violence was admitted over David's objection through a hearsay statement of Kim to her counselor and again through a hearsay statement that Kim had made to the guardian ad litem. This certainly did not constitute clear and convincing evidence that there was a tumultuous family relationship that posed a threat to A.A.
 {¶ 13} Because A.A. was only five years old at the time of the hearing, the trial court did not interview him but the guardian ad litem spoke on his behalf. The guardian ad litem testified that permanent custody was in the best interest of A.A. because A.A. needed a "clean break," but she did not explain why he needed such a break from his family. By the guardian ad litem's own testimony, she spent little time with David, she was not able to get A.A. to talk to her much, and there is nothing in her testimony to indicate that she ever observed David and A.A. together.
 {¶ 14} Although the guardian ad litem concluded that permanent custody was in A.A.'s best interest, she also concluded that legal custody to A.A.'s Aunt Tammy was "a very distinct secondary possibility[.]" Her opinion that permanent custody was a preferable option to legal custody appears to be based on the desires of A.A.'s Aunt Tammy, who would prefer adoption to legal custody because she would like a clean break and would prefer not to allow David and Kim to visit A.A. The wishes of a potential adoptive parent, however, are not listed among the statutory best interest factors and they certainly should not have predominated the guardian ad litem's opinion. Moreover, the guardian ad litem should have considered the wishes of A.A. and the bond between David and A.A., but it does not appear that her opinion was based on those considerations.
 {¶ 15} The next best interest factor is the custodial history of A.A. No one disputes the trial court's finding that A.A. had been in the temporary custody of CSB for more than 12 of the prior 22 months. As we have repeatedly noted, however, "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." In re Smith, (Jan. 2, 2002), at 10; 9th Dist. No. 20711; In re C.M., at ¶ 16.
 {¶ 16} There was not much evidence at the permanent custody hearing as to what transpired during the time that A.A. was in the temporary custody of CSB. We know very little about this young boy, his relationship with his father, or what either one of them was doing during this period. There was brief testimony that David did not complete the objectives of his case plan, but there was not much explanation of the specific shortcomings or, more importantly, how David's failures impacted his son.
 {¶ 17} The final factor that the trial court was required to consider was A.A.'s need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to CSB. This best interest factor is often established by the agency presenting evidence that the child needs a secure placement and that neither parent nor any suitable relative is available to care for the child on a permanent basis. See, e.g., In re J.G. and D.G., 9th Dist. No. 21994, 2004-Ohio-2513, at ¶ 15; In re Leitwein, 4th Dist. No. 03CA18, 2004-Ohio-1296, at ¶ 28.
 {¶ 18} In this case, however, the evidence established that there was a relative available who was suitable for long-term placement. A.A.'s Aunt Tammy, who the guardian ad litem and CSB considered to be a potential adoptive placement, was available and willing to take legal custody of A.A., although she would prefer to adopt A.A. and not have to deal with the parents. If a legally secure permanent placement could have been accomplished without terminating parental rights, however, the agency should have explored it and the trial court should have considered this less drastic alternative to permanently severing a family relationship.
 {¶ 19} We offer no opinion as to whether David is a parent whose parental rights should be preserved, for that is not the focus of this appeal. Again, this Court must stress that termination of parental rights is an alternative of last resort and the parent has no burden to prove that his or her parental rights should not be terminated. See In re Wise (1994),96 Ohio App.3d 619, 624. It was CSB that had the burden to prove, by clear and convincing evidence, that termination of David's parental rights was warranted. See R.C. 2151.414(B)(1). Given the evidence before the trial court on each of the mandatory best interest factors, we must conclude that CSB did not meet its burden in this case. The assignment of error is sustained.
 {¶ 20} The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Whitmore, J. Concurs.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.