DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Sarah N, appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children, A.W. and S.N., and placed them in the permanent custody of the Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Appellant is the mother of S.N., born May 9, 2000, and A.W., born March 23, 2002.[1] The fathers of the children did not participate in the hearing below, and are not parties to the present appeal.[2]
 {¶ 3} CSB initially became involved with the family when it received a referral that appellant was arrested for stabbing Billie Jo Willis, her live-in paramour and the father of A.W. On February 13, 2003, CSB filed a complaint, alleging that A.W. and S.N. were neglected and dependent, and seeking an order of emergency temporary custody. The complaint also alleged that appellant was in a drunken state at the time she stabbed Willis. CSB further alleged that appellant and Willis had a history of substance abuse problems, anger management issues, and domestic violence. The magistrate left the children in the custody of Willis, where they had been since appellant was arrested for stabbing him. Appellant was ordered out of the home and forbidden to have unsupervised contact with the children.
 {¶ 4} On March 24, 2003, CSB filed another complaint, again alleging that the children were neglected and dependent, and seeking emergency temporary custody. The complaint repeated the earlier allegations, and added that the children had been taken into the custody of the local police pursuant to Juv.R. 6, when Willis was arrested for failure to appear in court on domestic violence charges. The children were continued in the temporary custody of CSB. Appellant was permitted to return to the family home. Visitation was to be arranged at the discretion of CSB.
 {¶ 5} On April 17, 2003, the trial court adjudicated the children as dependent, pursuant to R.C. 2151.04(C), but found insufficient evidence to support a finding of neglect. Subsequently, at the dispositional hearing, the magistrate declared from the bench that it was in the best interest of the children to be returned to the custody of appellant. Prior to issuing a written decision, however, the trial court was advised by CSB that both appellant and Willis had just been arrested on drug charges.[3] In response, the trial court issued another order of emergency temporary custody and continued the dispositional hearing. At the time of the continued hearing, the parties agreed to place the children in the temporary custody of CSB. Case planning efforts focused on addressing domestic violence, anger management, alcohol abuse, and mental health issues.
 {¶ 6} On December 16, 2003, CSB moved for a first six-month extension of temporary custody, claiming that although appellant had substantially complied with her case plan, the agency would like to see whether appellant could maintain sobriety, continue anger management counseling, obtain an Alcoholics Anonymous ("A.A.") sponsor, attend A.A. meetings, and increase visitation with her children. On January 26, 2004, the trial court granted the motion for extension, and permitted appellant to have unsupervised visitation every Saturday from 9:00 a.m. until 3:00 p.m. in her home. Willis was prohibited from visiting during this time. There was also a two-hour visitation at the CSB visitation center weekly.
 {¶ 7} Less than two months later, on March 23, 2004, CSB sought to modify the order for unsupervised visitation due to concerns that appellant may have relapsed into substance abuse, that she was associating with people who could place her children at risk, and that her recent behavior demonstrated instability and poor judgment. In its motion, CSB also pointed to increasingly aggressive behavior by S.N., the older child, following unsupervised visits with appellant. The magistrate ordered that future visits be supervised by CSB.
 {¶ 8} On May 21, 2004, CSB once again requested a modification of visitation based on four recent police reports involving alcohol or domestic violence at appellant's home. CSB alleged a continuing pattern of alcohol abuse and domestic violence.
 {¶ 9} Ultimately, CSB moved for permanent custody on July 2, 2004, and appellant moved for a second six-month extension on September 22, 2004. Following a hearing held on both motions, the trial court denied appellant's motion for an extension and granted CSB's motion for permanent custody.
 {¶ 10} Appellant timely appealed and assigned two errors for review. The two assignments of error will be considered together because they are related.
 II. FIRST ASSIGNMENT OF ERROR
"The trial court's decision to grant permanent custody to csb is against the manifest weight of the evidence."
 SECOND ASSIGNMENT OF ERROR
"The trial court erred in overruling mother's motion to extend case plan."
 {¶ 11} Appellant contends that the trial court erred in denying her motion for a six-month extension. She also contends that because she substantially complied with her case plan, the weight of the evidence fails to support the judgment of the trial court, terminating her parental rights and granting permanent custody of the children to CSB.
 {¶ 12} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 13} The trial court found that the first prong of the test was satisfied because A.W. and S.N. had been in the temporary custody of CSB for at least 12 of the prior 22 months, and appellant does not contest that finding. Appellant challenges only the best interest prong of the permanent custody test.
 {¶ 14} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 15} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 16} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[4]
 {¶ 17} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." In re Smith (Jan. 2, 2002), 9th Dist. No. 20711. See, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 18} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. R.C. 2151.414(B). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" Inre Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 19} Appellant focuses much of her argument on her claim that she substantially complied with the requirements of her case plan. Evidence of case plan compliance is usually relevant to the trial court's best interest determination, but is not dispositive of it. See, e.g., In reA.A., 9th Dist. No. 22196, 2004-Ohio-5955, at ¶ 9; In re Atkins (Nov. 18, 1998), 9th Dist. No. 19037. Instead, the primary focus of the trial court's best interest determination is on the specific best interest factors listed in R.C. 2151.414(D).
 {¶ 20} The first best interest factor requires this Court to consider the relevant personal interactions and interrelationships of the children. Here, the primary relationship of concern is that of the children with their mother. Appellant testified, in her own behalf, that she is 25 years old, and that her parents were alcoholics and drug addicts. She is unemployed and meets her basic expenses through disbursements from a family trust fund. Appellant admits that she has a drinking problem, but claims she will do anything to get her children back and asks the court for another chance.[5]
 {¶ 21} During the 18 months in which this case was pending, appellant attended visitation fairly consistently, established a satisfactory residence, attended anger management and parenting classes, attended programs at the Battered Women's Shelter, and initiated psychological assessments. However, in terms of resolving her alcohol and domestic violence issues, there has been a marked lack of success.
 {¶ 22} Regarding her alcohol problem, appellant completed an inpatient substance abuse program at Edwin Shaw in August 2003, and participated in additional programs through Edwin Shaw, the Morley Health Center, Ramar, and Oriana House. However, despite all these programs, she has relapsed into alcohol use, has been discharged from at least one aftercare program because of lack of attendance, has failed to comply with requests for drug screens, has failed to obtain an A.A. sponsor, and has attended only five A.A. meetings in four months. She testified that she did not like the Ramar program and did not learn anything there. She also stated that she did not go to A.A. meetings because she did not like them and did not believe she learned anything there. She admitted forging documents in an attempt to falsely establish A.A. attendance.
 {¶ 23} In addition, Appellant has demonstrated a continuing pattern of associating with convicted felons and substance abusers with whom she had a volatile relationship. Of course, the event which initiated these proceedings was appellant's stabbing Willis in the back. At that time, appellant had been drinking heavily and blacked out. She recalled only waking up to remove the knife. This occurred at her residence while the children were at home, sleeping. During the pendency of this case, appellant was involved in at least six domestic violence incidents with at least three different men, all of whom have criminal records. Most of these incidents also involved alcohol.
 {¶ 24} Also of significance is the fact that appellant permitted these men back into her life and the home she shared with her children, even after the altercations. In fact, she even married one of them. Some of these domestic incidents occurred after appellant completed a substance abuse program and also a class at the Battered Women's Shelter which focused on learning how to stay out of dysfunctional and violent relationships. Another man, that she considered to be a friend, is a convicted felon and had been designated as a sexually oriented offender.
 {¶ 25} In her appellate brief, appellant blames Willis for being the source of her troubles and contends that she can now be successful because there is a warrant for his arrest and he is unlikely to return. The argument is not persuasive. Appellant's drinking problems and association with other felons continued even after Willis was out of the picture. And, as evidenced by her own testimony, appellant has failed to make an effort to participate in A.A. on a regular basis.
 {¶ 26} Unsupervised visitation at appellant's home had to be stopped because of evidence that appellant was drinking and involved in physical altercations. In addition, appellant permitted other individuals to attend unsupervised visitations in her home, in direct violation of court orders. Despite these problems, appellant stated that she is comfortable with her friends and has no strong desire to change them.
 {¶ 27} Deanna Clingerman, the CSB caseworker assigned to this case, testified that appellant's parenting was fine during her observations, and that there is a reciprocal bond with the children. She expressed concern, however, that appellant had unresolved problems of alcohol abuse and demonstrated poor judgment in her selection of men. Because of that, Clingerman did not believe appellant was able to assure the safety of either herself or her children. Linda Anderson, the guardian ad litem, testified similarly that appellant had some level of attachment with the children, but she unfortunately had an equal, if not greater, attachment to alcohol, her life style, and her friends. James Shipley, appellant's drug and alcohol counselor from Morley Health Center, testified that appellant's attendance at scheduled sessions was poor. In addition, he said appellant failed to disclose an arrest for driving under the influence of alcohol to him. Finally, Martin White, a counselor for S.N., testified that S.N. spoke very little about her mother — a matter that raised questions in his mind.
 {¶ 28} The record contains scant evidence of positive relationships with other friends or family of appellant. Appellant testified that her son, who previously lived with his sisters, "got along great" with them and has been to a couple of visits with them over the last year and one-half. However, Linda Anderson, the guardian ad litem, testified that A.W. and S.N. do not talk about their older brother. As to the fathers of the children, neither Willis nor Rowh have been involved in the children's lives for quite some time, and there is no evidence that either man is likely to offer any positive interaction with the children in the future.
 {¶ 29} A.W. and S.N. were said to be "playing comfortably" with the children of appellant's two sisters on one occasion, but the guardian ad litem testified that she never heard S.N. ask to see her cousins. As to Nicky and Shawna, appellant's sisters, there is little evidence regarding their relationship with the children. The record, however, reveals that Nicky attempted to steal a bottle of vodka from a grocery store by hiding it in a baby carriage in April 2004 and was charged with a theft offense. Shawna has a conviction for possession of cocaine, and had to be stopped by the guardian ad litem from trying to transport three-year-old S.N. in a car without a car-seat.
 {¶ 30} Evidence was also presented as to the relationship of the children with the foster family. A.W. and S.N. were said to be bonded with their foster parents and doing well in the home. The children are very close to each other, as well as to the one-year-old twins that are also living in the home. There is evidence that the home is appropriate and that the children are comfortable in the home.
 {¶ 31} The caseworker testified that appellant was not able to remedy the problematic situations in her home and has not made the sufficient progress necessary to ensure the safety of her children. She therefore opined that permanent custody was in the best interest of the children. Upon review, the evidence of the relevant personal interactions and interrelationships of the children weighs in favor of granting permanent custody to CSB.
 {¶ 32} The second best interest factor requires this Court to consider the wishes of the child. In this case, the four-year-old and two-and-one-half year old children did not testify. However, Linda Anderson, the guardian ad litem for the children, was able to address the court on their behalf. Anderson had worked with the family since the beginning of this case and had had quite a few meetings with the children and also with appellant. She indicated that she believed permanent custody was in the best interests of the children.
 {¶ 33} Anderson stated that, during her observations, appellant was "fine" with her children, and there was some level of affection and attachment between them. However, she emphasized that appellant is still drinking alcohol and involved in volatile behavior. Because of that, Anderson did not believe that appellant could adequately protect herself or her children. At the same time, Anderson stated that the children were doing very well in their foster home, and that they have bonded with the foster family.
 {¶ 34} The custodial history of A.W. and S.N. reveals that the children were removed from the custody of their mother when S.N. was two and one-half years old, and A.W. was nine months old. By the time of the hearing in this matter, the children had been out of appellant's custody for 18 months. Anderson, the guardian ad litem, testified to her concern that these are very young children who have spent a "huge percentage" of their young lives in foster care.
 {¶ 35} While the children were generally happy to see appellant and interact with her, when unsupervised visitations began, S.N., the older child, started acting out in school and became increasingly aggressive. Also during this period of time, A.W.'s arm was found to be broken. While it is uncertain how the arm was broken, the foster mother testified that S.N. admitted twisting the arm and breaking it. At that point, the foster mother initiated counseling for S.N. with Martin White. By the time of the hearing, S.N.'s behavior had improved towards her sister and at school. White testified that S.N. has a strong attachment to the foster family, and speaks very little about appellant. In addition, he stated that S.N. is stressed by the uncertainty in her life. He expressed concern with the impact of any further extensions upon this child as well as with the long-term effects of disrupted placements. The custodial history of the children weighs in favor of granting permanent custody to CSB.
 {¶ 36} Finally, as the to fourth best interest factor, Anderson, the guardian ad litem, testified that the children were in need of a legally secure placement and that there were no suitable friends or relatives to provide care for the children. She opined that permanent custody is in the best interest of the minor children. Furthermore, caseworker Clingerman testified that she did not believe a six-month extension would permit the children to be returned home. There was evidence that S.N. was becoming confused by the unsettled situation and her counselor recommended against any additional extensions. Moreover, the foster parents are interested in adopting the children if permanent custody is granted. The trial court reasonably concluded that a legally secure permanent placement could only be attained by placing the children in the permanent custody of CSB.
 {¶ 37} The record does not support a conclusion that the trial court erred in denying appellant's motion for a second six-month extension in this case. Furthermore, there was ample evidence before the trial court from which it could reasonably conclude that the best interests of A.W. and S.N. were to be placed in the permanent custody of CSB. This Court does not conclude that the trial court clearly lost its way and created a manifest miscarriage of justice. Appellant's two assignments of error are overruled.
 III. {¶ 38} Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Batchelder, J. Moore, J. Concur.
[1] Appellant also has a male child, born August 1, 1997, who is not a party to this action. Until this proceeding, the child lived with appellant during the week and with his father on weekends. He is currently in the custody of his father.
[2] The biological father of A.W. is Billie Jo Willis and the alleged father of S.N. is Michael Rowh. Each was served with notice of this proceeding. Because the paternity of Rowh was uncertain, service was also accomplished by publication on John Doe, as the unknown father of S.N.
[3] Willis was charged with two counts of aggravated drug trafficking, one count of possession of 7.5 grams of crack cocaine, one count of possession of criminal tools, and violation of probation. Appellant was charged with permitting drug abuse, a fifth degree felony.
[4] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.
[5] In regard to appellant's ability to learn from her past mistakes and make positive changes, the record is instructive. Appellant intended to end her relationship with Willis. However, appellant stayed with Willis in the spring of 2003, even though she "had a feeling" he was selling drugs. When Willis was convicted and sentenced to ten months in jail on drug charges, appellant did not visit him. When it was time for his release, however, she picked him up. She helped him pack, and moved him out of her house. A few months later, however, she asked him to go for a walk with her. During the walk, he assaulted her because "[t]hat's what he did when he got drunk." She then filed domestic violence charges against him and there is currently a warrant for his arrest. Although appellant says she has not seen him since then, she admits to having telephone contact. Such facts lend support to the judgment of the trial court.