DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Ernest S. ("Father"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his two minor children in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Father is the natural father of the two children at issue in this case, T.S., born December 19, 1999, and K.S., born November 2, 2001. The mother of the children is not a party to this appeal. Father was never married to the children's mother and their relationship ended before the birth of K.S.
 {¶ 3} On March 9, 2004, the children were removed from their mother's custody because she had left them with a friend for an extended period of time without making appropriate arrangements. According to the friend, the mother would call her a few times a week to say that she was coming for the children, but then she never came. Throughout most of their short lives, mother had left the children with different friends and acquaintances for long periods of time while she pursued her own interests.
 {¶ 4} The children were adjudicated neglected and dependent on May 18, 2004. A case plan was developed with a goal of reunification, but neither parent complied with any of the requirements for reunification. CSB attempted to keep Father updated on the case via regular mail and, although Father did not keep the agency informed about where he was living, CSB sent most information to his grandfather's home and Father did receive it. Nonetheless, Father did not respond to any of the information that CSB sent. He did not attend any scheduled visitations, nor did he contact his caseworker. He did not even maintain contact with his appointed counsel or the court. On August 8, 2005, CSB moved for permanent custody of both children.
 {¶ 5} The trial court allowed Father's prior appointed counsel to withdraw on September 26, 2005 because, at that point, counsel had been unable to contact his client for well over a year. On the date initially set for the permanent custody hearing, however, Father appeared and requested appointed counsel. Counsel was appointed and the permanent custody hearing was continued until May 24, 2006.
 {¶ 6} Following an evidentiary hearing, the trial court terminated parental rights and placed T.S. and K.S. in the permanent custody of CSB. Father appeals and raises one assignment of error.
 II. ASSIGNMENT OF ERROR "THE TRIAL DECISION GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND IMPROPER AS FATHER MADE INTENTIONS KNOWN AND THE COUNTY FAILED TO FACILITATE ANY VISITS OR EFFORTS OF FATHER TO COMPLY WITH CASE PLAN." {¶ 7} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. The trial court found that the first prong of the test was satisfied for numerous reasons, including that the children had been in the temporary custody of CSB for at least 12 of the prior 22 months. Father does not contest that finding.
 {¶ 8} Although Father does not directly challenge the trial court's decision on either prong of the permanent custody test, we will construe his argument as a challenge to the trial court's finding that permanent custody was in the best interests of T.S. and K.S.
 {¶ 9} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[1]
 {¶ 10} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 11} Father challenges the trial court's factual finding that he had no parent-child relationship with his children and had done virtually nothing during the pendency of this case to build a relationship with them. Father contends that this finding was "distorted" because the evidence demonstrated that he did contact CSB in an attempt to work toward reunification, but the agency refused to work with him. Although it is true that Father met with CSB personnel and asked to visit his children, he did not do so until March 2006, two years after the children were removed from the home and seven months after CSB moved for permanent custody. Because Father had not visited the children for more than two years and had no established relationship with them, CSB determined that it would not be in the best interests of these two young children to begin visitation with Father at such a late stage in the case.
 {¶ 12} For nearly two years of the case-planning period, Father had made no effort to work toward reunification. He did not visit the children; and he did not maintain contact with CSB, his prior attorney, or the court. Father claimed that he never knew what he was supposed to do and that he never received a case plan, but then admitted at the hearing that he signed the initial case plan. Moreover, he admitted that he received information sent by CSB to his grandfather's house, an address where Father often stayed and received mail. CSB presented evidence that it had sent regular updates on the case to Father, including dates of court hearings, visitation schedules, and a copy of the case plan. Initially, CSB had scheduled regular visits between Father and the children, but Father never came. Because it became increasingly disruptive for the foster family to drive the children to the visitation center to wait for visits that did not go forward, CSB later notified Father that it would not schedule any further visits until Father contacted the agency. Father made no contact with CSB regarding visitation for nearly two years.
 {¶ 13} Although Father presented testimony at the hearing that he had made many unsuccessful attempts to contact his caseworkers and to attend the scheduled visits, his evidence was sharply disputed by the testimony of several CSB witnesses. The trial court could reasonably conclude based on the evidence before it that Father never attended a single visit and did not attempt to meet with the caseworker until shortly before the permanent custody hearing.
 {¶ 14} Moreover, this Court has repeatedly held that although a parent's effort to comply with the case plan is often relevant to the trial court's best interest determination, it is not dispositive of it. See, e.g., In re A.A., 9th Dist. No. 22196, 2004-Ohio-5955, ¶ 9. Instead, the primary focus of the trial court's best interest determination is on the specific best interest factors listed above. Therefore, we will review the evidence as it pertained to the best interest factors explicitly enumerated in R.C. 2151.414(D).
 {¶ 15} The evidence demonstrated that the children's interaction with their parents had been minimal. Father had not visited the children once during the entire two years that they were in CSB custody. Even before the children were removed from the home, Father had maintained very little contact with them. There was no real family bond or parent-child relationship.
 {¶ 16} The children's interaction with each other was good. They had been placed in the same foster home for more than two years and their older sibling also lived in that home because the foster parents had adopted him a few years earlier. T.S. and K.S. were doing well in the foster home and had become close to the foster parents as well as their older sibling. The foster parents had expressed an interest in also adopting T.S. and K.S.
 {¶ 17} Because the children were only four and six years old at the time of the permanent custody hearing, they did not express their wishes directly to the court, but the guardian ad litem offered an opinion about what was in their best interests. The guardian ad litem recommended permanent custody to CSB, focusing on the lack of a relationship between these children and their parents and the lack of effort made by either parent to develop a relationship or establish a stable home for the children.
 {¶ 18} The early custodial history of T.S. and K.S. had been spent moving from place to place. These children had never lived in a stable home with either of their parents. When their mother did have custody of them, she would often drop them off with friends for extended periods of time. T.S. and K.S. had never lived with Father and had never even had regular visitation with him, but saw him only occasionally prior to the institution of this case. After the children were removed from their mother's custody, they spent over two years in the temporary custody of CSB. During that time, Father did not visit them once, nor did he otherwise work toward providing them with a suitable home. T.S. and K.S. had lived in the same foster home for over two years, a home in which they had also spent extended periods of time while their mother had custody of them, and that is the only real family and stable home that they have ever known.
 {¶ 19} There was also evidence before the trial court that T.S. and K.S. were in need of a legally secure permanent placement, as they had lived in limbo for essentially their entire lives, and that such a placement would be achieved only by granting CSB permanent custody. The evidence supports a conclusion that neither parent would be able to care for the children in the near future and there were no suitable relatives who were willing or able to have long-term custody of them.
 {¶ 20} Given the evidence before the trial court, we cannot say that it lost its way in determining that permanent custody was in the best interests of T.S. and K.S. The assignment of error is overruled.
 III. {¶ 21} The assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, P. J. BOYLE, J. CONCUR
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.