DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, LaTonya T., has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, terminating her parental rights to her three children and granting permanent custody of them to Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} LaTonya T. ("Mother") is the Mother of three children, M.T., born September 5, 2003; Mo.T., born April 27, 2005; and D.T., born July 28, 2006.
None of the men alleged to be the fathers had any contact with the children at any *Page 2 
time during the course of this case, nor have any of them appealed from the judgment of the trial court.
 {¶ 3} The two oldest children were initially removed from Mother's custody pursuant to Juv.R. 6 on November 12, 2005. At that time, the police were called to the home and allegedly found Mother threatening to smother one-year-old M.T. with a plastic bag and throw both children out the window. The children reportedly had no clothing on and there were concerns that Mother was under the influence of drugs. Upon a determination that Mother had an outstanding warrant for a drug offense in Portage County, Mother was taken into police custody and the children were placed in the care of CSB. As a result of the Portage County matter, Mother eventually pled guilty to a charge of aggravated possession of drugs, in violation of R.C. 2925.11. In lieu of a prison sentence, she was placed on probation.
 {¶ 4} Mother's third child, D.T., was taken into agency custody directly from the hospital following his birth on July 29, 2006, due to the fact that he was born with cocaine in his system, as well as concerns that Mother was a flight risk and had been non-compliant with her case plan for the other two children. A separate juvenile court action was filed by CSB in regard to D.T.
 {¶ 5} Initial filings as to all three children were voluntarily dismissed by CSB due to the statutory time requirements within which to complete the dispositional hearing. New complaints were filed for all the children. Those cases *Page 3 
proceeded to adjudications in which the two older children were found to be neglected and the youngest was found to be abused and dependent.
 {¶ 6} The case plan required Mother to: (1) participate in parenting classes and demonstrate effective parenting skills; (2) undergo a drug and alcohol assessment and follow all recommendations, including drug screens; (3) follow the rules of her probation, including regular drug screens; and (4) consistently meet the children's basic needs.
 {¶ 7} Meanwhile, the Portage County Prosecutor's Office sought to modify or revoke Mother's probation in her criminal case. A hearing was held and Mother's probation was revoked due to a failure to report as directed; testing positive for cocaine on July 28, 2006 and August 10, 2006; and giving birth to a baby that tested positive for cocaine. Mother was incarcerated on October 2, 2006 with an expected release date of September 22, 2007.
 {¶ 8} Eventually, permanent custody was sought as to all three children. Following a hearing, the trial court entered judgment on March 12, 2007. As to the alleged fathers, the trial court found that they had all abandoned the children. As to Mother, the trial court found that the children could not be returned to her within a reasonable period of time and should not be returned to her. In addition, the trial court found that an award of permanent custody was in the best interests of the children. Accordingly, the trial court terminated the parental rights of *Page 4 
Mother and all alleged or unknown fathers and placed the three children in the permanent custody of CSB.
 {¶ 9} Mother has appealed to this Court and has assigned a single error for review.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY OF M.T., M.T., AND D.T. TO SUMMIT COUNTY CHILDREN SERVICES BECAUSE THE CHILDREN COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS CONTRARY TO LAW[.]"
 {¶ 10} Mother's assignment of error is directed to the question of whether the children could be placed with her within a reasonable time. Her supporting argument also challenges the trial court's finding on the best interests of the children.
 {¶ 11} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under *Page 5 
R.C. 2151.414(D). See R.C. 2151.414(B) (1) and 2151.414(B) (2); see, also, In re William S (1996), 75 Ohio St.3d 95, 99.
 {¶ 12} The trial court found that the first prong of the permanent custody test was satisfied because the children could not be returned to a parent within a reasonable period of time and should not be returned to a parent's care. Mother challenges that finding as being unsupported by the weight of the evidence and contrary to law.
 {¶ 13} The Ohio Supreme Court has recently reaffirmed that the manifest weight of the evidence standard to be applied in civil cases is that standard which was explained in CE. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. See State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Pursuant to this standard, a reviewing court will presume that the findings of the trier of fact are correct since the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., quoting Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."Wilson, supra at ¶ 24, quoting Seasons Coal, 10 Ohio St.3d at 81. "Thus, a judgment *Page 6 
supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed." Wilson, supra at ¶ 26.
 {¶ 14} Accordingly, before this Court will reverse a judgment as being against the manifest weight of the evidence in a permanent custody case, it must determine whether the judgment of the trier of fact was supported by some competent, credible evidence going to all the essential elements of the case. If the judgment is so supported, then the judgment of the trial court must be affirmed.
 {¶ 15} As to the first prong of the permanent custody test, R.C.2151.414(E) provides that the trial court is required to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if the court determines that one of the factors set forth in that section exists as to each of the parents. Pursuant to that statute, the trial court determined that the fathers of the children had abandoned them. See R.C.2151.414(E)(10). The trial court also found that Mother (1) failed to remedy the conditions that brought the children into care, pursuant to R.C. 2151.414(E)(1); (2) was repeatedly incarcerated for drug activity, which prevented her from providing care for her children, pursuant to R.C. 2151.414(E)(13); and (3) failed to demonstrate a commitment to the children, pursuant to R.C. 2151.414(E)(4).
 {¶ 16} In regard to Mother's challenge of the finding pursuant to R.C.2151.414(E)(13), Mother has asked this Court to compare R.C.2151.414(E)(13) with R.C. 2151.414(E)(12). R.C. 2151.414.(E)(13), the factor relied upon by the *Page 7 
trial court, is based on the "repeated incarceration" of the parent when such incarceration has prevented the parent from providing care for the children. R.C. 2151.414(E)(12) is based on the parent being incarcerated at the time of the filing of the motion for permanent custody or the time of the dispositional hearing and the parent not being available to care for the child "for at least eighteen months" thereafter.
 {¶ 17} Mother has argued that the trial court's reliance on R.C.2151.414(E)(13) is unsupported by the record because Mother's stay in the Portage County Jail was "brief." See Brief of Appellant-Mother at p. 10. It appears that Mother is suggesting that because she was not to be incarcerated for 18 months as required by R.C. 2151.414(E)(12), that the trial court erred in relying on R.C. 2151.414(E)(13), which references "repeated incarcerations."
 {¶ 18} This Court disagrees. The trial court did not rely on R.C.2151.414(E)(12) and properly so, since Mother's sentence was less than 18 months long. Furthermore, the trial court did not err in finding support in R.C. 2151.414(E)(13). That provision makes no reference to the length of the incarceration of the parent, but rather to the repeated nature of the jailing and the fact that such detention has prevented the parent from providing care for the children.
 {¶ 19} In this case, Mother was incarcerated on two occasions and was, as a result, prevented from providing care for the children. On November 12, 2005, *Page 8 
Mother was arrested on an outstanding warrant for a drug offense, and the children were placed in custody pursuant to Juv.R. 6. After three days,[1] Mother was released from jail and placed on probation. On or about October 2, 2006, Mother's probation was revoked and she was incarcerated again. Mother's release date was stated to be approximately one year later, September 22, 2007.
 {¶ 20} Thus, it appears that Mother was incarcerated for three days on one occasion and for four months — as of the time of the hearing — on another occasion. Obviously, Mother could not provide care for these young children during either of these periods. None of the fathers was in a position to care for the children. Furthermore, Mother was not able to offer a family member or friend that could provide care for the children in her absence. There is no error by the trial court in concluding, therefore, that Mother had been "repeatedly incarcerated" and that such "repeated incarceration prevents the parent from providing care for the child." R.C. 2151.414(E)(13). Consequently, this finding by the trial court is supported by competent, credible evidence and is not against the weight of the evidence. See State v. Wilson, supra, at ¶ 24.
 {¶ 21} Moreover, in reaching its conclusion that the children could not or should not be placed with Mother within a reasonable period of time, the trial *Page 9 
court also relied on two additional findings, i.e., (1) that Mother had failed to remedy the conditions that brought the children into care, pursuant to 2151.414(E)(1), and (2) that Mother had failed to demonstrate a commitment to the children, pursuant to R.C.2151.414(E)(4). Either finding requires that the trial court conclude that the children could not or should not be placed with Mother within a reasonable time.
 {¶ 22} In regard to the failure to remedy the conditions that brought the children into care, the trial court noted that the children first came into care when Mother was arrested on a drug-related offense and no one was available to provide for the children. In its judgment entry, the trial court found that Mother failed to comply with the treatment recommendations required by the case plan and also failed to follow up on numerous referrals made by the CSB caseworker. The trial court specifically noted that Mother did not submit to urine drug screens as requested, that Mother did not comply with the treatment program through the Community Health Center, that Mother and D.T. tested positive for cocaine at the time of the child's birth, and that Mother's probation was revoked and she was incarcerated due to continued drug use and non-compliance with the terms of her probation. The evidence amply supports this finding of the trial court.
 {¶ 23} Next, in regard to the finding that Mother had not demonstrated a commitment to the children, the trial court found that Mother had failed to comply with the case plan and that even though her children were in foster care, she did *Page 10 
not believe the situation was "serious." Indeed, Mother's testimony contained a litany of excuses. She admitted that she did not perform the requested drug tests because she was "stressed out" and in "denial." She did not begin parenting classes because she was told they were between sessions, but then did not call back to schedule the classes. She testified that she missed visits with her children because she was either sick or tired from using drugs. While she understood and admitted that her oldest child appeared sad to leave after her visits, Mother still could not motivate herself to act upon her case plan. She claims she did not know how to get help and did not have any support. She stated that she did not realize drugs would ruin her life as they did, did not believe everything would happen so quickly, and did not think the case would go this far. She admitted that she first told CSB workers that this was a case of "mistaken identity," but, at the hearing, reasoned only that "stuff happens." She stated that she now realizes that drugs ruined her life and believes that prison was a good thing for her.
 {¶ 24} In her appellate brief, Mother makes no argument regarding either of these two additional "E" factors that support the trial court's determination that the children cannot or should not be placed with her within a reasonable time. See R.C. 2151.414(E). Consequently, because we conclude that the trial court's finding pursuant to R.C.2151.414(E)(13) is supported by the weight of the evidence and also because Mother has not challenged the trial court's additional findings pursuant to R.C. 2151.414(E)(1) or R.C. 2151.414(E)(4), there is no basis *Page 11 
upon which to vitiate the determination that the children cannot be placed with a parent within a reasonable time or should not be placed with a parent.
 {¶ 25} As to the second prong of the permanent custody test, the trial court concluded that it was in the best interests of the children to be placed in the permanent custody of CSB. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 26} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the *Page 12 
enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at 6. See, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 27} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quotingCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 28} The first best interest factor requires a consideration of the children's relationships with other individuals in their lives. Mother has asserted that the evidence demonstrates that a bond exists between her and her children, and has claimed that the testimony of the guardian ad litem displayed a lack of insight because she was not able to determine whether the children and Mother were bonded after for observing a few visits. While the guardian ad litem hesitated to make a judgment as to whether the children and Mother were bonded, the CSB caseworker testified that the children did appear to be bonded with Mother at the time of their visits and that Mother interacted appropriately with the children at the visitation center. Furthermore, the caseworker testified that she observed portions of a dozen visits, and had no concerns about Mother's interaction with her children. She stated that the children were happy to see Mother at visits and that *Page 13 
the oldest child would sometimes cry at the end of visits. She also testified that Mother's visitations were first scheduled to be once per week, and in February 2006, were changed to twice per week.
 {¶ 29} There was also evidence, however, that Mother's visits never progressed beyond supervised status, that Mother attended visits only sporadically, that Mother never began the requested parenting classes, and that she never presented documentation of claimed temporary employment. Even more important was the evidence that she had been selling drugs out of her residence,[2] had missed or cancelled three appointments for her drug assessment at the Community Health Center before finally completing it in August 2006, had complied with only three out of ten specific requests for drug screens over the course of eight months, had not received any prenatal care for D.T., and that D.T. had, in fact, been born with cocaine in his system. These matters are relevant to a consideration of the interaction and interrelationship of the children with Mother.
 {¶ 30} For her part, Mother testified that her drug tests had been negative while she was incarcerated, which had been four months by the conclusion of the hearing. The caseworker countered that drug tests are only meaningful when performed while the parent is out in the community where he or she lives. *Page 14 
 {¶ 31} There was no evidence regarding other relationships of the children. The children had no relationship with any man believed to be the father of any of them. Nor was there any evidence of any relationship with any other relatives or friends in the community.
 {¶ 32} Mother has asserted that the trial court minimized many examples of her compliance with case plan objectives. This Court has previously explained that while compliance with a case plan may be relevant to the trial court's best interest determination, it is not dispositive. See, e.g., In re A.A., 9th Dist. No. 22196, 2004-Ohio-5955, at ¶ 9. As examples of her efforts to comply with her case plan, Mother points to the fact that she completed her substance abuse assessment at the Community Health Center in August 2006 and that the caseworker testified that she demonstrated safe and effective parenting skills with the children during visits. Although Mother completed a substance abuse assessment in August 2006, that assessment was initially requested months earlier and Mother cancelled three appointments before finally completing it. Furthermore, Mother took few steps in furtherance of the ensuing recommendations. She presented only three screens for urinalysis out of at least ten specific requests and attended only two counseling sessions — basically the initial fact-finding sessions. In addition, Mother never began parenting classes, another requirement of her case plan. *Page 15 
 {¶ 33} Mother's attorney has attempted to argue on appeal that the children's needs were being met at the time of their removal from the home by suggesting that the children appeared to be fed and that their medical needs were satisfied. Upon review of the transcript, it appears that the caseworker indicated that the children's needs were being met by their caregivers while they were in foster care, not while they were in the care of Mother. In addition, the caseworker's testimony on the condition of the children at the time of their removal is rather vague.
 "Q. Now, prior to the children's removal from [Mother,] do you have any reason to believe that their basic needs were not being met?
 "A. Nothing was reported to me.
 "Q. And when the children were removed, did they appear to be well-fed?
 "A. I wasn't there. I don't know.
 "Q. Based on your review of the history of your CSB records, was there any indication that the children appeared to be malnourished when they were removed?
 "A. No.
 "Q. Was there any indication that their shot records or any of that stuff was not up to date?
 "A. I don't know about that. I didn't read — I don't remember that, but I just — I don't remember that sticking out that the children were unnourished or dirty or things like that.
 "Q. So in all actuality, Objective Number 2 of the case plan has been complied with. *Page 16 
 "A. Well, it's been complied with in the essence that the children have been in placement since the time that I have had the case. I can't speak for how — what happened prior to the removal of the children, but the agency also has a responsibility to make sure that the children's basic needs are met, and they have been met since they have been in care."
Transcript 100-101.
 {¶ 34} Mother also points to the caseworker's testimony that there were no "toys laying around" in an effort to establish that the home was organized. This evidence might imply either neatness or a complete lack of toys for the children to play with, but is conclusive of neither. In any event, the testimony does not establish that Mother was meeting the basic needs of the children.
 {¶ 35} Finally, any argument that Mother was meeting the basic needs of her children when they were removed from the home ignores the critical fact that, at the time of the removal of the two oldest children, Mother was threatening to suffocate the youngest child and throw the two of them out the window — hardly supportive of an argument that Mother was meeting her children's basic needs.
 {¶ 36} In addition, Mother has attempted to establish compliance with her case plan by pointing to her testimony that while in prison, she had signed up for recovery and GED classes and was on the waiting list for parenting classes. What this amounts to, however, is that, as of February 9, 2007, or four months into her prison term and 15 months after her children were first removed from her care, Mother had attended one week of recovery classes and had not yet begun GED or parenting classes. *Page 17 
 {¶ 37} As to the second best interest factor, the guardian ad litem spoke on behalf of the children. He indicated that while Mother behaved appropriately at visits and the children often appeared to want to stay with her at the end of visits, he believed permanent custody was in their best interests. He also did not believe a six-month extension was appropriate because he had not observed any commitment on behalf of Mother or any demonstration of an ability to follow through on her good intentions. Specifically, the guardian ad litem reported that Mother had not complied with drug testing or recommended treatment, and she had not attended or completed a parenting program. He stated that Mother continually made up excuses for her failed efforts. He also said Mother never permitted him to see the inside of her home.
 {¶ 38} At the same time, the children were said to be bonding with the foster caregiver. The caregiver was said to be providing adequate care and emotional support to the children. The guardian ad litem stated that the oldest child displayed some aggressive behaviors and hugged strangers indiscriminately, and that counseling and a psychological assessment would be recommended if her behaviors continued.
 {¶ 39} The custodial history of the children reflects that the two oldest children lived with their Mother until November 2005, when they were taken into the custody of CSB. Thus, the oldest child lived with Mother for two years and the second child lived with Mother for six months before entering care. By *Page 18 
August 2006, when the motion for permanent custody was filed, the two oldest children had been in the custody of CSB for eight months. D.T., born in July 2006, had been in CSB custody virtually his entire life. All three were placed in foster care, though in separate homes. At the time that the motion for permanent custody was filed, the two oldest children were moved from their foster placements to the same home as D.T. That family was interested in adopting all three children together.
 {¶ 40} There was evidence before the trial court that these children were in need of a legally secure placement and that there were no suitable relatives willing to take custody of them. Mother testified that she had no good family support because they all took drugs. That, she explained, was the reason she had moved from Cleveland to Akron.
 {¶ 41} Mother has suggested that the fact that she missed only four visits during the 15 weeks from February 13, 2006 through June 6, 2006 means she will be able to provide a legally secure placement for the children. But the evidence also demonstrates that during the next 15 weeks, from June 6, 2006 through September 19, 2006, she missed nine visits. The trend is thus counter to Mother's claim and the facts do not tend to support Mother's argument.
 {¶ 42} There was ample evidence before the trial court from which it could conclude that permanent custody was in the children's best interest. Consequently, the trial court did not err in terminating Appellant's parental rights, and placing the *Page 19 
children in the permanent custody of CSB. Appellant's assignment of error is overruled.
 III. {¶ 43} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 20 
Costs taxed to Appellant.
DICKINSON, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] In his order revoking Mother's probation, Judge Kainrad, judge of the Portage County Court of Common Pleas, indicated that Mother would receive credit for three days served in this case. It is reasonable to conclude, therefore, that Mother served three days in jail.
[2] Detective Paul Fafrak testified that, on August 29, 2005, he was working undercover and purchased crack cocaine from Mother. According to Fafrak, Mother insisted that he give her some of the cocaine and she smoked it immediately. Appellant was later charged and convicted of a drug offense. *Page 1